**184**

UNITED STATES, Appellee,

v.

Dennis L. BLAKE, Technical Sergeant,
U.S. Air Force, Appellant.

No. 62,636.

ACM 27338.

U.S. Court of Military Appeals.

June 14, 1990.

For Appellant: *Captain Ronald A. Gregory* (argued); *Colonel Richard F. O'Hair* (on brief); *Captain Laurence M. Soybel* and *Captain Michael C. Barrett*, USAFR.

For Appellee: *Captain James C. Sinwell* (argued); *Colonel Joe R. Lamport* and *Major Terry M. Petrie* (on brief); *Captain Joseph V. Treanor, III.*

*Opinion of the Court*

COX, Judge:

Appellant was tried by a general court-martial including enlisted members at Osan Air Base, Republic of Korea. Pursuant to his pleas, he was found guilty of one specification of larceny of government funds totaling $38,452.93, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. Appellant was sentenced to confinement for 24 months, forfeiture of $471 pay per month for 24 months, a fine of $5,000, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the findings and sentence. The Court of Military Review affirmed in a short-form opinion. On appeal, we granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED IN ADMITTING PROSECUTION EXHIBIT 2 INTO EVIDENCE.

Appellant, a 39–year–old, retirement-eligible Technical Sergeant, was assigned in Korea as a food service accountant for the 51st Services Squadron at Osan Air Base. Sometime in July 1987, during a period when appellant was allegedly drinking heavily, as much as "[t]en or fifteen drinks a night," he met and fell in love with a Korean bar girl. He began "buying her" things and "[s]he went through ... [his] money like it wasn't even there, and ... kept asking ... for more money, more money...." When he "ran out of money," he "started taking ... [it] from the dining hall." After his thefts were discovered, the girl informed him that she had "just used" him, and within 2 weeks "she got married to a Marine." On August 10, 1988, appellant turned himself "in as an alcoholic," and he began rehabilitative treatment on August 12, 1988. From August 1987 through May 1988, appellant "skim[med]" $38,452.93 from funds belong-

ing to the United States Government to support his personal activities.

At an Article 39(a), UCMJ, 10 USC § 839(a), session before the members were seated for sentencing, defense counsel offered into evidence an affidavit from the Chief of Military Pay and Travel at Osan Air Base. The affidavit stated the following regarding appellant's retirement pay:

> According to Ringler Association of Washington, D.C., the average life expectancy of a male born in 1949 is 74.6 years. Based on this information an E–6 with 20 years service who retires at the age of 39 would receive retirement for 35.6 years, a total of $678,693.24 in pay. This figure is based on a person in good health and assumes a 4 percent cost of living increase annually.

Trial counsel did not object to admitting the affidavit. Instead, he argued that this evidence would allow him to introduce evidence that would show "what the future value of the $38,452.93" (the amount stolen by appellant) would be over 35.6 years. The military judge accepted the defense affidavit in evidence.

In rebuttal, trial counsel "offered documentary evidence in the form of an affidavit" or, in the alternative, as part of his "case in chief in sentencing ... [to] call a witness" from the Accounting and Finance Office to lay "out that if $38,452.93 ... were invested at five percent for 35.6 years ... the value of that would be $225,-518.39." Defense counsel "contest[ed] ... admission" of the affidavit and objected "that any probative value" the document had was "far outweighed by any prejudicial impact it might have as well as the relevance."

The military judge overruled the objection, stating:

> MJ: ... The court finds that the information presented—I believe first of all there is relevance to the case at hand, particularly the amount of money in question being $38,452.93 that was stolen; that the court is being rather liberal in allowing the defense to present Defense Exhibit A [the affidavit], giv-

en that Sergeant Blake is retirement eligible and presenting information on what that possible retirement pay would be worth during the course of a lifetime. That information, as pointed out, is somewhat speculative. The court believes the government is entitled, similarly—given Defense Exhibit A being admitted—to present what the value of that $38,000.00 would be. The court finds that it is of value for the members, one, in terms of the implications of the [$]38,000 as well as to keep in some context what we are talking about when we start talking about interest or cost of living increases and how the pay or the dollar value substantially increases over a period of time. The court believes that the type of information indicated in Prosecution Exhibit 2 [the affidavit] is basically a matter that is within the comprehension of all military members and certainly military members that are equal to or above the grade of technical sergeant, and, therefore, is not something that they would give undue reliance on. The court does not find that this information itself is prejudicial in and of itself and, regardless, the court thinks that the probative value of this information would outweigh any prejudicial impact although, as I said, the court is at a little bit of a loss to see what the prejudicial impact of this would be. However, again out of an abundance of caution, *I am going to require the government to call [the witness] rather than to present this information through a document because—while the rules of evidence are relaxed in sentencing proceedings— the court does not believe they are sufficiently relaxed for the government to present this by way of an affidavit.*

(Emphasis added.)

Defense counsel responded that "it would be in the defense's best interest ... to allow the exhibit to stand on its own ... rather than bring that witness before the

members." When asked by the military judge if, without "waiving ... [his] objection under [Mil.R.Evid.] 403 and 401," Manual for Courts–Martial, United States, 1984, he "would ... prefer to orally stipulate as to" the witness' "expected testimony," defense counsel "agreed to ... a stipulation of fact" stating:

It is hereby agreed between the trial counsel and defense counsel with the expressed consent of the accused that the following is true.

If $38,452.93 were deposited in a savings account and earned quarterly compounded interest at a rate of 5% per annum, its value in 35.6 years would be $225, 518.-39.

Although the Government's evidence regarding the future value of the money appellant stole was always referred to as rebuttal evidence, it was actually introduced in the Government's original case in aggravation. Appellant has argued before this Court that it was error to admit the challenged exhibit. For the reasons stated below, we disagree.

"It is well settled that the function of rebuttal evidence is to explain, repel, counteract or disprove the evidence introduced by the opposing party." *United States v. Wirth*, 18 MJ 214, 218 (CMA 1984), *quoting United States v. Shaw*, 9 USCMA 267, 271, 26 CMR 47, 51 (1958) (Ferguson, J., dissenting); *cf. United States v. Trimper*, 28 MJ 460 (CMA), *cert. denied,* — U.S. —, 110 S.Ct. 409, 107 L.Ed.2d 374 (1989). On sentencing, because "the defense is given wide latitude in the nature of the evidence it is permitted to offer, ... some latitude must likewise be accorded to the Government or only a one-sided picture is presented to the sentencing authority." *United States v. McGill*, 15 MJ 242, 246 (CMA 1983) (Cook, J., concurring with reservations) (citation omitted).

In the case before us, the military judge correctly allowed this rebuttal evidence before the members. We have recognized that on sentencing, "the impact of an adjudged punishment on the benefits due an accused who is eligible to retire is often the single most important sentencing matter to that accused and the sentencing authority." *United States v. Griffin*, 25 MJ 423, 424 (CMA), *cert. denied,* 487 U.S. 1206, 108 S.Ct. 2849, 101 L.Ed.2d 886 (1988). Trial counsel was still given the opportunity to object to the evidence going before the members. The most obvious objection would have been that the projected loss of retirement income to appellant was not sufficiently substantiated as accurate and, therefore, was irrelevant under Mil.R.Evid. 401 and 402. *Cf. United States v. Henderson*, 29 MJ 221, 222 (CMA 1989).

Apparently, trial counsel had no quarrel with the accuracy of the projected lost retirement income. Instead, he sought only to offer rebuttal in-kind: that is, the Government should be allowed to "explain, repel, counteract or disprove the evidence" offered by appellant that he would lose the use of future retirement income as a result of a punitive discharge. According to trial counsel, the Government likewise had lost any future monies as a result of appellant's misbegotten but substantial larceny of government mess funds.

While this rebuttal does not disprove or explain appellant's projected loss of retirement income, we hold that it legitimately repels and counteracts appellant's claim before the members about how a punitive discharge would affect his retirement pay.

In short, appellant was not the only party suffering a substantial financial loss as a result of his felonious theft. If appellant wanted to offer limited speculation to the members about lost future income, the Government had the right to remind the members why they were sitting at a general court-martial in the first place.

Defense counsel objected at trial that such rebuttal was not relevant because there was no proof that the Government ever would have put the lost mess funds in an interest-bearing savings account. We agree with the military judge, however, that defense counsel essentially opened the door to reasonable speculation about the lost future value of money. Further, defense counsel was given the opportunity to

confront a Senior Master Sergeant of the Accounting and Finance Office if he chose to contest the accuracy of the figures presented by the Government. But, as shown heretofore, counsel did not want the witness to be called to testify, hoping to avoid drawing any further attention to the issue. The rebuttal in-kind was proper because: Defense counsel put the future-monies issue before the members on sentencing, and the Government likewise should be able to show the extent to which it also suffered a pecuniary loss.

Defense counsel also argued that the probative value of the evidence was substantially outweighed by its prejudicial effect, under Mil.R.Evid. 403. We disagree, for a number of reasons. The evidence had probative value, albeit limited, to rebut appellant's claim that he alone was suffering financial loss in the future due to the circumstances surrounding a punitive discharge. Although the evidence was somewhat speculative, there is nothing in the record to indicate that it was unduly confusing or misleading. Mil.R.Evid. 403; *United States v. Henderson, supra.*

If evidence has probative value, the general rule followed by this Court is that it will be admitted unless that value is found to be "substantially outweighed by" its prejudicial effect. S. Saltzburg, L. Schinasi, and D. Schlueter, *Military Rules of Evidence Manual* 343 (2d ed. 1986). We afford broad discretion to the military judge to make this determination. *Cf. United States v. Redmond,* 21 MJ 319 (CMA), *cert. denied,* 476 U.S. 1105, 106 S.Ct. 1950, 90 L.Ed.2d 359 (1986). The judge's findings here are well supported by the record, and we see no reason to disturb them.

We caution all trial counsel that our holding does not open the door to all such evidence at trial or on sentence aggravation to show that stolen money will always have a future value greater than its present cash value. Such evidence is normally irrelevant as to the issue of the value of the stolen money at a trial on the merits. Regarding such evidence for aggravation, appellate government counsel argued in their brief that the Discussion for RCM 1001(b)(4), Manual, *supra,* states that "[e]vidence in aggravation may include evidence of *financial,* social, psychological, and medical impact on or cost to any person or entity who was the victim of an offense committed by the accused ...." (emphasis added). We do not, however, sanction such broad use of this type of evidence.

We believe financial loss is ordinarily limited in larceny cases to the proved value of the stolen property at the time of the theft. The same discussion continues to include "evidence of significant adverse impact on the *mission, discipline, or efficiency of the command* directly and immediately resulting from the accused's offense." (Emphasis added.) The mission of a base mess fund is to maintain sufficient amounts of government money on hand to procure food for military personnel. Such funds are not provided for financial investment. Our ruling here applies only to the evidence as it was offered in rebuttal and under the specific facts of this case.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge EVERETT and Judge SULLIVAN concur.