UNITED STATES, Appellant,

v.

**Terry D. HALLUM, Private First Class, U.S. Army, Appellee.**

No. 63,729.

CM 8900822.

U.S. Court of Military Appeals.

Argued April 18, 1990.

Decided Sept. 27, 1990.

For the Accused: *Captain Allen F. Bareford* (argued); *Colonel Robert B. Kirby, Lieutenant Colonel Russell S. Estey, Captain Brian D. Bailey* (on brief).

For the United States: *Captain Timothy J. Saviano* (argued); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Captain Denise J. Arn* (on brief).

*Opinion of the Court*

COX, Judge:

Private Hallum was tried before a military judge sitting alone as a special court-martial convened by the Commander, 2d Armored Division (Forward), at Lucius D. Clay Kaserne, Garlstedt, Federal Republic of Germany. Pursuant to his pleas, the accused was found guilty of "wrongfully distribut[ing] approximately 1 gram of marijuana in the hashish form," in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. He was sentenced to confinement and forfeiture of $446.00 pay per month for 4 months; reduction to E–1; and a bad-conduct discharge.

The convening authority approved the sentence. The Court of Military Review, in an unpublished opinion, set aside the sentence and ordered a rehearing. Pursuant to Article 67(b)(2), UCMJ, 10 USC § 867(b)(2), the Acting Judge Advocate General of the Army certified the following questions to this Court for resolution:

I

WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED AS A MATTER OF LAW BY HOLDING THAT THE UNCHARGED MISCONDUCT WAS INADMISSIBLE TO REBUT DEFENSE EXHIBITS T, U, AND V.

II

WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED AS A MATTER OF LAW BY HOLDING THAT THE UNCHARGED MISCONDUCT DID NOT RELATE TO OR RESULT FROM THE CHARGED OFFENSE.

Private Hallum entered pleas of guilty to one specification alleging wrongful distribution of hashish. On sentencing, defense counsel first offered several exhibits in ex-

tenuation and mitigation, all of which related to accused's financial status. He then proffered three unsworn, handwritten statements from other servicemen who worked with the accused. None of these declarations mentioned anything about drug use or distribution, but went only to each man's opinion of the accused as a medic in the Army. All three statements indicated that the men had known the accused for at least a year, and offered praising opinions such as:

PFC Hallum ... has demonstrated exceptional ability as a medic. He is well liked by both his line company ... and also by his fellow medics.

\* \* \* \* \* \*

If we were to go to war PFC Hallum is the type of sold[ier] medic I would want by my side.

\* \* \* \* \* \*

He has always had a take charge and accomplish the mission attitude[.] [T]o me he has the knowledge and what it takes to be a very effective Combat Medic that I would want by my side.

Trial counsel then offered as rebuttal to these statements the following testimony of Special Agent Donald A. Hayden of the Criminal Investigation Command (CID), to whom the accused had earlier confessed to the distribution of hashish:

Q: What substance did the accused tell you that he'd sold?

A: He admitted to selling hashish.

Q: Did he tell you how much he was selling it for?

A: No, sir, he did not.

Q: Did he tell you to whom he was selling it?

A: Sir, he admitted that he'd sold to his former roommate, Private Jones, and to other personnel when they would come to his room.

Q: Did he tell you how he'd made this deal?

A: Sir, he admitted that he would obtain an amount of hashish from another soldier on post and that he would just have it in his room; people would come by; and he would sell it to them.

Defense counsel objected to this testimony, arguing that it was irrelevant for sentencing purposes. The military judge ruled the testimony admissible as rebuttal to the statements offered by the defense, stating:

MJ: ... You're picturing the accused as a glowing soldier and I think the Government has a right to present evidence that it believes may contradict that picture.

\* \* \* \* \* \*

MJ: I think the Government can also present this evidence to show the course of conduct of the accused and that it's related. So, I'll allow it under that also.

The Court of Military Review set aside the sentence, holding that, although the testimony was proffered as aggravation evidence,

[t]he uncharged misconduct in this case did not relate [to] or result from the offense for which appellant was convicted. Indeed it was intended to show only that ... [the accused] was predisposed to commit crime and was not proper rebuttal to evidence of general good character.

Unpub. op. at 2, *citing United States v. Wingart*, 27 MJ 128, 136 (CMA 1988).

We disagree with the court below. The uncharged misconduct was proper *rebuttal* evidence. As we said in *United States v. Wirth*, 18 MJ 214, 218 (CMA 1984), *quoting United States v. Shaw*, 9 USCMA 267, 271, 26 CMR 47, 51 (1958) (Ferguson, J., dissenting):

"It is well settled that the function of rebuttal evidence is to explain, repel, counteract or disprove the evidence introduced by the opposing party."

We went on to say:

[R]ebuttal refers to the order of presenting evidence at trial and, within the discretion of the trial judge, it is normally restricted to the proponent's presentation of "evidence ... made necessary by the opponent's case in reply." 6 Wigmore, *Evidence* § 1873 (Chadbourn rev.1976) (footnote omitted). Accordingly, the rel-

evance of the Government's rebuttal evidence must be determined in light of evidence first introduced and issues initially raised by the defense at ... [the] court-martial.

18 MJ at 218. But *cf. United States v. Cleveland*, 29 MJ 361 (CMA 1990) (accused's unsworn statement that he felt he had served well not statement of fact; thus, evidence of prior uncharged misconduct not admissible to rebut the claim); and *United States v. Brown*, 16 MJ 36 (CMA 1983) (records not maintained in accordance with departmental regulations inadmissible in aggravation of sentence; evidence of adverse entry in accused's record did not really rebut anything offered by accused at trial and was inadmissible to rebut evidence submitted by acccused in extenuation and mitigation of sentence). As indicated, the military judge ruled that the accused's evidence in mitigation portrayed him "as a glowing soldier," and the Government was allowed to "repel" that portrayal.[1] In addition, had the individuals who submitted the statements been subject to cross-examination, they certainly could have been impeached both if they were aware or unaware of the uncharged misconduct, which apparently took place during the time they knew Hallum. *See United States v. Wingart, supra.*

Defense counsel chose to open the door regarding the accused's good military character utilizing witnesses who could not be cross-examined about their opinions. The Government was properly afforded the opportunity to respond. Absent an abuse of discretion, the military judge's ruling should be allowed to stand.[2]

The decision of the United States Army Court of Military Review setting aside the sentence is reversed. The record of trial is returned to the Judge Advocate General of the Army for resubmission to that court for further review under Article 66, UCMJ, 10 USC § 866.

Judge SULLIVAN concurs.

EVERETT, Chief Judge (dissenting):

A

After the military judge had found the accused guilty of distributing one gram of hashish on November 3, 1988, the military judge explained to Hallum his rights in the presentencing proceeding. Then he inquired of the defense what it was "going to do," to which defense counsel responded, "An unsworn statement, Your Honor, and a few witnesses. We also have some documentary evidence." A similar inquiry to the prosecutor produced this answer: "I have two witnesses and some documents."

The military judge then stated, "Let's have all the documents marked and offered." Thereupon, various prosecution exhibits were offered and received in evidence without objection. Next, also without any objection, the defense offered various documents, including three statements pertaining to the accused. Thereafter, the accused's company commander was called as a prosecution witness to testify about the effects on his unit of distribution of drugs. Finally, the Government called Special Agent Hayden, who offered the testimony which is the subject of the present appeal.

Over defense objection, the judge received this evidence "as rebuttal to the statements presented by the defense. You're picturing the accused as a glowing soldier and I think the Government has a right to present evidence that it believes may contradict that picture." After hearing Hayden testify on direct examination that Hallum had "admitted that he would obtain an amount of hashish from another soldier on post and that he would just have it in his room; people would come by; and he would sell it to them," the military judge stated, "I think the Government can

---

**1.** The Court of Military Review characterized the statements as depicting appellant as "a good friend, a good person and a knowledgeable combat medic." However, the language of the statements speaks for itself. The judge did not err in permitting rebuttal by evidence that appellant was less than might have been hoped for in a medic.

**2.** Given this disposition, we need not decide if the testimony was properly received as "aggravation" evidence. RCM 1001(b)(4), Manual for Courts–Martial, United States, 1984.

also present this evidence to show the course of conduct of the accused and that it's related. So, I'll allow it under that also."

### B

The majority now reasons that "[t]he military judge found as a matter of fact that the accused's evidence in mitigation portrayed him 'as a glowing soldier' and the Government was allowed to 'repel' that portrayal." At 256. To me, this is a unique view of what constitutes a matter of "fact." The only basis for the "factual" determination was three documents; and, in my view, the interpretation of documents usually is a matter of law rather than fact.

According to Judge Smith, writing for the majority in the court below, these three documents "were handwritten statements prepared by three privates who characterized appellant as a good friend, a good person, and a knowledgeable combat medic." Unpub. op. at 1. Senior Judge Foreman, concurring in the result, stated that the three statements "were offered to show that the appellant was a knowledgeable combat medic, a good friend, and a caring person." *Id.* at 255. Neither they nor I view these statements as equivalent to saying that Hallum was a "good soldier" —as the military judge and the majority of this Court apparently use that term. Therefore, the court below came to the conclusion that the government evidence was not proper rebuttal of these statements; and I fully agree.

The majority opinion here also comments, "In addition, had the individuals who submitted the statements been subject to cross-examination, they certainly could have been impeached if they were aware of the uncharged misconduct which apparently took place during the time they knew Hallum." At 256. This suggestion rests on pure speculation that the three privates who submitted the statement must have been "aware of the uncharged misconduct," because it "apparently took place during the time they knew Hallum." It also assumes that, if they had testified,

cross-examination about the uncharged misconduct would have been within the scope of the direct examination and that they would have admitted their knowledge of uncharged misconduct. On the other hand, if they did not admit to such knowledge on cross-examination, the extrinsic evidence offered by Special Agent Hayden would have been inadmissible to impeach their testimony.

I am also disturbed that the opportunity for "rebuttal" arose because of the military judge's seeming failure to follow the procedure prescribed by the Manual for the presentation of evidence during sentencing proceedings. *See* RCM 1001(a)(1), Manual for Courts–Martial, United States, 1984. The customary sequence is government evidence in aggravation, defense evidence in mitigation, and government evidence in rebuttal. Although a military judge has discretion as to the order of presentation of evidence, in this case, it would have been better had the usual order of proof been followed.

### C

After hearing the direct testimony of Special Agent Hayden, the military judge indicated that it was also admissible as part of a course of conduct. Apparently, he had in mind that, under RCM 1001(b)(4), the Government may offer evidence "as to any aggravating circumstances *directly relating to or resulting from the offenses of which the accused has been found guilty.*" (Emphasis added.)

Judge Smith, in the court below, determined that "[t]he uncharged misconduct in this case did not relate [to] or result from the offense for which appellant was convicted. Indeed, it was intended to show only that appellant was predisposed to commit crime...." Unpub. op. at 2. Again I agree fully. The wording of the rule and the Discussion that accompanies it makes clear that RCM 1001(b)(4) does not sweep within its scope evidence that might generically relate in some way to the type of offenses charged against an accused. Instead, what the Rule authorizes is recep-

tion of evidence showing the circumstances and the impact of an accused's crime so that he may be appropriately punished *for that crime* and what it has done to others.

As far as I can tell, evidence that Hallum sold hashish on other occasions, when offered in the present context, is intended by the Government to show only one thing: he did it before; he did it now; and he should be punished *for the whole course of conduct*. As Judge Smith recognized, that is improper; and it is not what RCM 1001(b)(4) intends.

### D

Because I agree with the court below, I would answer the two certified questions in the negative and affirm their decision.