UNITED STATES

v.

**Bud W. TYNDALE, 465 19 2874, Staff Sergeant (E–6), U.S. Marine Corps.**

**NMCM 97 01741.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 23 April 1997.

Decided 29 Sept. 1999.

Maj Dale Anderson, USMC, Appellate Defense Counsel.

Capt Paul D. Kovac, USMC, Appellate Government Counsel.

Before LEO, Senior Judge, ANDERSON and ROLPH, Appellate Military Judges.

LEO, Senior Judge:

The appellant was tried before a special court-martial composed of officer members and was convicted, contrary to his pleas, of wrongful use of methamphetamine, in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (1994). He was sentenced to reduction to pay grade E–3 and a bad-conduct discharge. The convening authority approved the sentence as adjudged.

We have carefully examined the record of trial, the appellant's five assignments of error,[1] and the Government's response. We conclude that the assignments of error are without merit, the findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

## I. ADMISSIBILITY OF UNCHARGED MISCONDUCT TO REBUT INNOCENT INGESTION DEFENSE

Due to the interrelatedness of the appellant's first two assignments of error, we will address them together. The appellant contends that the military judge erred in admitting, over defense objection, rebuttal evidence to an innocent ingestion defense that the appellant says he never asserted, as well as evidence that the appellant had a

1. I. THE MILITARY JUDGE ERRED WHEN HE PERMITTED THE GOVERNMENT TO INTRODUCE EVIDENCE OF THE APPELLANT'S PRIOR POSITIVE URINALYSIS.

II. THE MILITARY JUDGE ERRED WHEN HE PERMITTED THE GOVERNMENT TO INTRODUCE EVIDENCE OF LACK OF INNOCENT INGESTION WHERE THE APPELLANT NEVER RAISED AN INNOCENT INGESTION DEFENSE.

III. THE MILITARY JUDGE ERRED WHEN HE PERMITTED THE GOVERNMENT TO INTRODUCE EVIDENCE OF THE APPELLANT'S INCRIMINATING POLYGRAPH.

IV. THE RECORD OF TRIAL INDICATES THAT THE SUBSTITUTE DEFENSE COUNSEL INTENDED TO SUBMIT CLEMENCY MATTERS, BUT NONE WERE INCLUDED IN THE RECORD OF TRIAL.

V. A SENTENCE INCLUDING AN UNSUSPENDED BAD–CONDUCT DISCHARGE IS INAPPROPRIATELY SEVERE CONSIDERING THE APPELLANT'S EXTENSIVE PRIOR SERVICE AND OUTSTANDING MILITARY RECORD.

prior positive urinalysis in 1994. We disagree.

■ Military Rule of Evidence 404(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), prohibits the admission of uncharged misconduct as character evidence solely "to prove the character of a person in order to show action in conformity therewith." *United States v. Castillo,* 29 M.J. 145, 150 (C.M.A.1989). Uncharged misconduct may be admitted, however, to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," so long as the exception under which the evidence is offered is *clearly* an issue in controversy before the court. MIL.R.EVID. 404(b); *United States v. Reynolds,* 29 M.J. 105, 110 (C.M.A.1989).

■ Decisions by a military judge on the admissibility of evidence are reviewed for a clear abuse of discretion. *United States v. Miller,* 46 M.J. 63, 65 (1997). An abuse of discretion is action that is arbitrary, clearly unreasonable, or clearly erroneous. *United States v. Travers,* 25 M.J. 61 (C.M.A.1987). If error is found, this court must test for prejudice. Art. 59(a), UCMJ; MIL.R.EVID. 103.

## A. BACKGROUND

The appellant submitted a urine sample on 7 October 1996, as part of a random urinalysis sweep. His sample subsequently tested positive for methamphetamine, resulting in the charge before this court-martial. At trial, the trial counsel moved to introduce a prior positive urinalysis test by the appellant from 1994, for which the appellant was tried and acquitted before a special court-martial. In support of the Government motion, Major [G], who prosecuted the first case, disclosed that the appellant had raised an innocent ingestion defense at his prior court-martial utilizing an explanation very similar to one that the Government expected the appellant to use in this case. After receiving evidence on the motion, the military judge limited the admission of the 1994 urinalysis result to rebuttal, contingent upon the appellant first raising a defense of innocent ingestion.

During his case-in-chief, the appellant testified only as to the current charge. He claimed to know ahead of time that there would be a urinalysis test on Monday, 7 October, and could have avoided participating in it if he had wanted to do so; he had worked as a professional musician at a private party the Saturday before the test; he stayed home with his wife and children on Sunday; and he did not use drugs before the 7 October urinalysis test was administered. Over defense objection, the military judge allowed the trial counsel to cross-examine the appellant as to statements he made to others, after the positive result was reported, that someone may have slipped drugs into his drink without his knowledge. The military judge also allowed the trial counsel to cross-examine the appellant as to the details of the private party that he attended on Saturday.[2]

After the defense closed its case, the military judge found that there was sufficient evidence in the record to raise an innocent ingestion defense. Over defense objection, he permitted the trial counsel to present

---

2. The appellant's testimony during cross-examination is summarized as follows:

I didn't use methamphetamine and I don't know how it got in my system. I told Lieutenant Colonel Musca and Chief Warrant Officer Jackson that it might have gotten into my system while I was at a party. I'm a musician, who plays the guitar and electric keyboard. I was hired to do a "gig" that night. I don't know the name of the person who hired me. I went with my brother and stayed from about 1800 till 0700 the next day. I believe that I drank about a case of beer during that time, but I was still able to play my instrument. I was paid $75 for that job. The party was at a two-story condo. There were about 45 to 60 people in attendance. The only one I knew was my brother. It was a pretty radical crowd. I didn't see anyone using drugs, but my brother told me that drugs were being used in the back. As a result, I removed my sound equipment from the place and just played acoustic. I took a urinalysis test afterwards, which turned up positive. I thought there was a possibility that my drink was spiked. The people who hired me for the gig weren't there when I went back. I didn't file a police report and didn't ask the Government to help me find them. I wasn't aware that the Government could do anything about it. I don't know exactly which condo it was, because I went back a couple of months later and there were literally hundreds of apartments that all look alike in that complex. Record at 186–96.

evidence of the appellant's 1994 urinalysis result, under Mil.R.Evid. 404(b). The trial counsel argued that evidence of this uncharged misconduct was relevant and admissible to rebut the appellant's innocent ingestion defense because it showed knowledge and intent to wrongfully use methamphetamine. Major [G] was recalled by the Government to testify that the appellant had tested positive in 1994 for methamphetamine. He also testified about the explanation the appellant had given at that time concerning drugs that may have been slipped into his coffee without his knowledge.[3] On cross-examination, Major [G] informed the members that the appellant was taken to a court-martial for the prior use, and that he was acquitted.

On surrebuttal, the defense called the appellant's brother to corroborate the appellant's testimony regarding the party at which he played the Saturday prior to his 7 October urinalysis test. Additionally, the appellant was recalled to explain why he did not leave the party when he heard that drugs were being used. He stated that he did not leave because he had been hired to do a job. Since paying jobs are not that plentiful for musicians, being around people that one would not necessarily choose to be associated with was an occupational hazard of that profession. He denied seeing any illegal drug activity himself; otherwise, he said that he would have left. The appellant stated that he got most, but not all, of his drinks from his brother. Since he does not use drugs, he believed that someone may have slipped drugs into his drink. Even though the incident is similar to the one in 1994, he denied

that it was akin to "lightning striking twice," asserting instead that he is more of a target when working as a musician because he is a Marine and people, therefore, know that he would not do drugs.

## B. INNOCENT INGESTION DEFENSE

Despite the defense counsel's careful avoidance of any direct reference to innocent ingestion during his opening statement and his direct examination of the appellant, the appellant's testimony that he went to a party prior to the urinalysis test and his general denial of drug use raised at least three possible explanations for the members to consider: (1) the urinalysis test itself was defective; (2) the urine sample that was tested did not belong to the appellant; or (3) the appellant unknowingly ingested the drugs. Thus, innocent ingestion was clearly one of the issues before the members.

However, assuming *arguendo* that the appellant's testimony on direct examination was not enough to raise a defense of innocent ingestion, we find that the appellant's general denial of any drug use and his chronological recitation of what he did the weekend prior to the urinalysis test, at the very least, opened the door to cross-examination about the details of his activities that weekend. The appellant's responses during cross-examination clearly raised the defense of innocent ingestion.

Finally, the appellant called two polygraph examiners to testify that the appellant did not appear deceptive when asked if he had *knowingly* ingested methamphetamine in connection with the 7 October urinalysis test.

---

3. Major [G]'s testimony is summarized, as follows:

During 1994, I became aware that the accused tested positive for the presence of methamphetamine. The accused explained that he is a musician and had played down in the Ocean Beach area for fun with his brother. As the accused was playing his guitar on the beach, a person named "Chris" joined them, who also played the guitar. Chris complimented the accused and invited them to a friend's apartment to "jam" with them. The accused said he didn't know Chris' last name, nor did he get the name of the owners of the apartment. After the jam session ended, the accused said he told them it was time to leave because he was tired. Someone made

him a cup of coffee and told him it would keep him awake. He described the people at the apartment as having long hair and tattoos, like people who might do drugs. After the accused tested positive for methamphetamine, he and his brother looked, but could not find the people who lived in the apartment. The apartment complex management would not cooperate. They did find Chris on the beach. He gave them his phone number, which turned out to be fake. The accused didn't remember the exact address of the apartment and didn't ask the Government for help to find the owner of the apartment. The accused also said that he knew ahead of time that there was going to be a urinalysis test. Record at 309–13.

These defense witnesses removed any doubt whatsoever that innocent ingestion was part-and-parcel of the appellant's overall defense, which the Government was entitled to rebut.

## C. ADMISSION OF PRIOR POSITIVE URINALYSIS

■■■■ During rebuttal, the military judge admitted evidence from the trial counsel concerning a 2–year–old positive urinalysis result, where the appellant offered a similar explanation, on the grounds that it showed knowledge and intent with respect to the illegal use of methamphetamine. Record at 364. The defense of innocent ingestion challenges the permissive inference of "wrongfulness and, more particularly, knowledge" that arises from a positive urinalysis result. *United States v. Ford*, 23 M.J. 331, 336 (C.M.A.1987). Intent is similarly raised as an issue in controversy because the appellant admitted that it was possible that he may have used methamphetamine, but asserts, if he did, that he had no criminal intent in doing so. *See United States v. Reynolds*, 29 M.J. 105, 110 (C.M.A.1989).

Besides showing that the uncharged misconduct is *logically relevant* under Mil. R.Evid. 404(b), the Government must also show that the evidence is *probative* and that its probative value is not substantially outweighed by the danger of unfair prejudice.[4] To be probative, the evidence must reasonably establish that the appellant, in fact, committed the act from which knowledge and intent may be inferred. Black's Law Dictionary 1203 (6th ed.1990). In doing so, "[t]he Government need only show that a trier of fact could reasonably conclude that the accused did commit the act sought to be introduced." *United States v. Jones*, 32 M.J. 155, 157 (C.M.A.1991)(citing *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988)); *United States v. Cuellar*, 27 M.J. 50, 54 (C.M.A.1988).

Very recently, in *United States v. Graham*, 50 M.J. 56 (1999), a case cited by the appel-

lant as supplemental authority, our superior court confronted the issue of the admissibility of a prior positive urinalysis under Mil. R.Evid. 404(b) and found that the military judge had erred in admitting this evidence. The accused in that case was tried for one specification of wrongful use of marijuana. The military judge had limited the trial counsel to one question, during cross-examination of the accused, about a positive urinalysis for marijuana use almost 4 years earlier to rebut the accused's testimony denying any knowing use of marijuana and describing his reaction as "shocked, upset, and flabbergasted" when notified of the positive urinalysis test result. The evidence of uncharged misconduct consisted solely of the accused's admission that he had tested positive on a previous occasion for marijuana and had been acquitted of any misconduct. The military judge followed with a limiting instruction to the effect that the prior urinalysis result was *not* an indication that the accused had *knowingly* used marijuana on that occasion or on the occasion of the charge before it. However, the military judge instructed that the members could consider this evidence for the limited purpose of showing the likelihood that the accused would test positive twice and that he would have been truly "flabbergasted" when informed of the urinalysis result.

In setting aside the findings and sentence, the court held that a "prior, ostensibly innocent, ingestion" did not "rebut a claim that a subsequent ingestion was also innocent." *Graham*, 50 M.J. at 58. Innocent ingestion had not been clearly raised as a defense to the pending charge before the court-martial. Therefore, in the absence of a *"clear relationship"* between the prior test result and the issues at stake in the present case ... the danger of unfair prejudice far outweighed [its] limited probative value." *Id.* at 60.

Expressing its disagreement with the logic in the military judge's instruction, the court found that the uncharged urinalysis test result failed to apply to the limited purposes

---

4. Evidence of uncharged misconduct is only admissible if it meets the following standards: (1) it must reasonably support a finding that the accused, in fact, committed the prior crimes, wrongs, or acts; (2) it must make a fact of consequence more or less probable; and (3) the probative value must not be substantially outweighed by the danger of unfair prejudice. *United States v. Miller*, 46 M.J. 63, 65 (1997)(citing *Reynolds*).

for which it was admitted. The military judge's instruction simply created confusion as to the proper use of this evidence, which was highly prejudicial to the accused. Finally, to the extent that the evidence might be arguably relevant, the court found that the Government had laid no evidentiary foundation from which a permissive inference of wrongful use could properly be drawn for the uncharged urinalysis test result. *Id.* at 60. (citing *United States v. Harper*, 22 M.J. 157 (C.M.A.1986); *United States v. Murphy*, 23 M.J. 310 (C.M.A.1987); *United States v. Ford*, 23 M.J. 331 (C.M.A.1987)).

Although the case at bar also involved the introduction of a prior positive urinalysis, we find the particular facts here to be distinguishable. First, knowledge and intent were clearly relevant facts in controversy, as discussed earlier, to rebut the appellant's defense of innocent ingestion. Second, the testimony of Major [G] focused on the circumstances surrounding the prior urinalysis; specifically, details of the story about a possible innocent ingestion that the appellant had related at his earlier court-martial. The significance of this evidence lies not so much in the urinalysis result itself, as in the comparison of the earlier story to the story that the appellant was now using. Consequently, the members were not being asked to determine if the appellant had, in fact, used methamphetamine on that prior occasion. Rather, they were to utilize this evidence to assess the credibility of the appellant's defense of innocent ingestion on the current charge in determining whether the use was knowing and intentional. In summary, the story that the appellant told at the time of the prior urinalysis was like-kind rebuttal evidence properly offered to counter the story told by the appellant during his case-in-chief. *United States v. Hallum*, 31 M.J. 254, 255 (C.M.A.1990).

In deciding whether the probative value of the uncharged urinalysis evidence is substantially outweighed by the danger of unfair prejudice, we note, first of all, that the evidence became relevant and probative when the appellant *elected* to raise the possibility of innocent ingestion. Second, it appeared to be the best evidence then available to rebut

the defense of innocent ingestion. Third, the appellant's defense counsel, in cross-examining Major [G], brought out the important fact that the appellant was acquitted at a court-martial of the charge arising from the uncharged urinalysis, thereby allowing the members to put the newly admitted evidence into proper context. Finally, the members were given an adequate limiting instruction, which protected the appellant from improper use of this evidence. *See* Record at 364. Based on the foregoing, we find that the military judge did not abuse his discretion in permitting the appellant to be cross-examined about a possible innocent ingestion defense or in admitting evidence of the appellant's prior, positive urinalysis result and the circumstances surrounding it. Assignments of Error I and II are without merit.

## II. ADMISSION OF POLYGRAPH EVIDENCE

Citing *United States v. Scheffer*, 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998), the appellant contends that the military judge erred in permitting the Government to introduce the appellant's incriminating polygraph. We disagree.

At the time this case went to trial, our superior court had held in *United States v. Scheffer*, 44 M.J. 442 (1996), *rev'd* 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998), that the *per se* rule of inadmissibility of polygraph evidence under Mil.R.Evid. 707(a) was unconstitutional, as applied to cases in which an accused offered such evidence to rebut an attack on his credibility. The U.S. Supreme Court reversed this decision approximately a year after the appellant's conviction, effectively restoring the prohibition against polygraph evidence under Mil. R.Evid. 707(a).

During the trial, it was the appellant who initially offered polygraph evidence in his case-in-chief through two polygraph examiners. They testified as to the results of their examinations, and their conclusion that there were no indicia of deception by the appellant in answering questions about the drug use charge before the court. In rebuttal, the Government offered the testimony of its own expert, without defense objection, who testi-

fied that the appellant did display indicia of deception.

 The prohibition against polygraph evidence under Mil.R.Evid 707(b) applies to all such evidence from whatever source, not merely evidence offered by the Government. By first introducing polygraph evidence into these court proceedings and not objecting to the Government's rebuttal witness, the appellant effectively waived any objection to consideration of this kind of evidence and opened the "scope of rebuttal" to like-kind evidence from the Government. *United States v. Banks,* 36 M.J. 150, 166 (C.M.A. 1992). Neither, do we find plain error. *U.S. v. Powell,* 49 M.J. 460, 464–65 (1998). Accordingly, this assignment of error is without merit.

### III.   CLEMENCY MATTERS

 In his fourth assignment of error, the appellant contends that the record of trial should be remanded because it indicates the substitute trial defense counsel intended to submit clemency matters and none were included in the record. We disagree.

The record of receipt for the Staff Judge Advocate's Recommendation [SJAR] indicates that the appellant's defense counsel received the SJAR on 29 July 1997, wherein he indicated that he would submit comments or corrections within the next ten days. Appended to the bottom of the receipt is a notation by Gunnery Sergeant [R], Review Chief for the unit, indicating that no matters had been received from the defense as of 15 August 1997.

RULE FOR COURTS-MARTIAL 1106(f)(5), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.) affords an accused's counsel the opportunity to review and submit matters for the convening authority's consideration within 10 days from receipt of the SJAR. Absent plain error, the failure of counsel to do so constitutes waiver.

The appellant has provided no evidence to indicate that the appellant's counsel, in fact, intended to submit clemency matters or that there was plain error in this instance. Absent such a showing, we find this assignment of error to be without merit.

### IV.   SENTENCE APPROPRIATENESS

 In his final assignment of error, the appellant contends that an unsuspended bad-conduct discharge is inappropriately severe in light of his extensive record of outstanding military service. After giving careful consideration to the nature and seriousness of the offense and the character of the appellant, we believe that the sentence, while severe, is not inappropriately so. *United States v. Healy,* 26 M.J. 394, 395 (C.M.A.1988); *United States v. Snelling,* 14 M.J. 267, 268 (C.M.A.1982). The assignment of error is without merit.

### V.   DISPOSITION OF CASE

We hereby affirm the findings and sentence, as approved on review below.

Judge ANDERSON and Judge ROLPH concur.