**UNITED STATES**

v.

**Airman First Class Brian J. MALHIOT,
United States Air Force.**

**ACM 35339.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 5 Sept. 2002.

21 Sept. 2004.

Appellate Counsel for Appellant: Colonel Beverly B. Knott, Major Terry L. McElyea, and Captain Diane M. Paskey.

Appellate Counsel for the United States: Colonel LeEllen Coacher, Lieutenant Colonel Lance B. Sigmon, and Captain Steven R. Kaufman.

Before STONE, GENT, and SMITH, Appellate Military Judges.

## OPINION OF THE COURT

STONE, Senior Judge:

The military justice sentencing scheme operates within a narrow range of admissible evidence. Evidence that is logically relevant to the determination of an appropriate sentence is often excluded, reflecting the "systemic costs of having court members determine sentences" in an adversarial proceeding. *United States v. Brogan,* 33 M.J. 588, 592 (N.M.C.M.R.1991) (citing *United States v. Charley,* 28 M.J. 903, 908 (A.C.M.R.1989)). This case illustrates the difficulty of distinguishing logical relevance from legal relevance.

The appellant pled guilty to three drug specifications. Article 112a, UCMJ, 10 U.S.C. § 912a. He admitted to using marijuana and ecstasy three times each. He also admitted to distributing small amounts of ecstasy to a confidential informant on two occasions. A panel of officer members sentenced the appellant to a bad-conduct discharge, confinement for 1 year, and reduction to the grade of E–1. The convening authority approved the sentence as adjudged. The appellant assigns six errors. We discuss only three: (1) Whether the military judge erred when he admitted, over defense objection, a videotape showing the underlying facts of the appellant's prior civilian conviction; (2) Whether the military judge plainly erred when he allowed trial counsel to elicit testimony from an arresting officer regarding the underlying facts surrounding this civilian conviction; and (3) Whether the military judge erred in allowing the appellant's first sergeant to testify, over defense objection, about specific instances of uncharged misconduct. We discuss Issues (1) and (2) together. Finding prejudicial error as to all three issues we address, we reassess the sentence and affirm the findings.[1]

## STANDARD OF REVIEW

This Court reviews a military judge's ruling on the admissibility of sentencing evidence for a clear abuse of discretion. *United States v. Zakaria,* 38 M.J. 280, 283 (C.M.A.1993). Military judges abuse their discretion if their findings of fact are clearly erroneous or their conclusions of law are incorrect. *United States v. Ayala,* 43 M.J. 296, 298 (C.A.A.F.1995). For rulings based on Mil. R. Evid. 403, we exercise "great restraint" if the military judge articulated his or her reasoning on the record. *United States v. Harris,* 46 M.J. 221, 225 (C.A.A.F. 1997). If an appellant fails to object to evidence at trial, we review the record for plain error. *United States v. Powell,* 49 M.J. 460, 464 (C.A.A.F.1998).

## CIVILIAN CONVICTION

### Background

After accepting the appellant's guilty pleas, the military judge held a session pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a), to review sentencing evidence. Trial counsel offered evidence of a civilian conviction the appellant received from a state court in Lowndes County, Georgia. Consistent with his pleas, the state court convicted the appellant of four offenses: "attempting to elude," "reckless driving," "driving under the influence," and "failing to have proof of insurance." These offenses occurred around midnight on 13 March 2002—a few weeks after an investigation began into the appellant's drug activities, but several months before his court-martial. Trial counsel offered

1. We have considered the remaining issues and find them without merit.

two prosecution exhibits relating to this civilian conviction.

The first exhibit was a certified copy of the state court conviction. In addition to the appellant's pleas and the findings, the documents revealed that the appellant was sentenced to confinement for a period of 48 months, but after 30 days of confinement, the balance was to be probated. Additionally, the appellant was ordered to pay a $1,625 fine, pay restitution in the amount of $11,000, perform 40 hours of community service, and submit to drug and alcohol testing.

The second document was a letter of reprimand from the appellant's personnel files. His commander apparently issued the reprimand to document the state court convictions in the appellant's official records. The reprimand stated that the appellant's actions "resulted in damage to multiple [residences] in the local area as well as damage to the good name of the Air Force and Moody [Air Force Base]." Defense counsel voiced no objection to these two documents, and they were admitted. *See* Rule for Courts–Martial (R.C.M.) 1001(b)(2) and (3).

But defense counsel did object to the admission of a videotape taken from a camera in the arresting officer's police cruiser. The videotape recorded the appellant's erratic driving while the police officer followed in hot pursuit on the night of his arrest. It also recorded events occurring after the appellant crashed his vehicle in a residential neighborhood. Soon after the crash, numerous police officers arrived on the scene and repeatedly demanded that the appellant get out of his vehicle. The videotape also showed the appellant being advised of Georgia's law on implied consent and the appellant's refusal to consent. In making his objection, the defense counsel advised the military judge that the videotape was *inadmissible because it was*: (1) outside the scope of R.C.M. 1001(b); (2) cumulative to the record of conviction and the letter of reprimand; and (3) more prejudicial than probative under the balancing analysis of Mil. R. Evid. 403. Additionally, he argued that the trial counsel had failed to establish a proper foundation for admission of the videotape.

The government's theory of admissibility was twofold. Trial counsel argued that the videotape not only demonstrated the appellant's lack of rehabilitation potential, but also fully explained the events surrounding the civilian conviction. Defense counsel countered this argument by inviting the court's attention to R.C.M. 1001(b)(5) and highlighting the portion of the rule that limits evidence of rehabilitation potential to *opinion.*

After conducting an in-camera review, the military judge admitted the videotape, subject to the police officer establishing a proper foundation. In doing so, the military judge stated the videotape was not cumulative to the previously admitted documents because it "fully explains the events and circumstances that occurred that evening." As to the objection based on Mil. R. Evid. 403, the military judge concluded that even though the video was "real, real, real bad for the defense," it had "significant probative value with respect to the rehabilitative potential of the accused" because the incident came so close upon the heels of the appellant's drug investigation. In making his ruling, however, the military judge did not specifically address the defense counsel's objection as to the form of the evidence, i.e., whether the videotape was improper rehabilitation evidence because it was not in the form of an opinion.

During the government's sentencing case-in-chief, the arresting officer testified and established the foundational requirements for admitting the videotape. But his testimony went well beyond the requirements for establishing a proper foundation and included numerous details about the aggravated nature of the car chase. Defense counsel did not specifically object to the testimony concerning the underlying details. But in response to the military judge's query at the end of the officer's testimony, defense counsel indicated that although his concerns about a proper foundation were met, his remaining objections were not withdrawn.

*Discussion*

█ It was clearly error to admit the videotape and to allow the police officer to testify about the events on the videotape as *rehabilitation* evidence. In the government's

case-in-chief, a trial counsel is only authorized to present testimony "in the form of *opinions* concerning the accused's . . . potential for rehabilitation," regardless of the logical relevance of the evidence. R.C.M. 1001(b)(5)(A) (emphasis added).

But this does not end our inquiry. Sentencing evidence inadmissible under one rule does not preclude its admissibility under a different provision of R.C.M. 1001(b). *United States v. Ariail,* 48 M.J. 285, 287 (C.A.A.F.1998). Thus, we turn to the question of whether the videotape and testimony were admissible under the trial counsel's alternate theory—to explain the underlying circumstances of the civilian conviction pursuant to R.C.M. 1001(b)(3)(A).

■ Although R.C.M. 1001(b)(3)(A) allows a trial counsel to introduce "evidence of" a military or civilian conviction, the rule does not address how much detail a prosecutor may present about the underlying circumstances of the misconduct. In *United States v. Douglas,* this Court's most recent decision on the issue, we considered the question of whether a stipulation of fact from a previous court-martial qualified for admission under R.C.M. 1001(b)(3) as "evidence of" a conviction. 55 M.J. 563 (A.F.Ct.Crim.App.2001). In concluding that the stipulation of fact was not admissible, we noted:

> The President's sentencing rules are more restrictive than those used in the federal district courts. *United States v. Cleveland,* 29 M.J. 361, 363 (C.M.A.1990). Thus, evidence that may be logically relevant to the determination of an appropriate sentence may not be admissible. . . . We believe the clear import of the President's rule is to limit the evidence the prosecution can introduce under R.C.M. 1001(b)(3) to a document that reflects the fact of the conviction, including a description of the offense, the sentence, and any action by appellate or reviewing authorities.

*Id.* at 566 (citing *Brogan,* 33 M.J. at 593).

Upon further review, a divided Court of Appeals for the Armed Forces affirmed this Court's decision. *United States v. Douglas,* 57 M.J. 270 (C.A.A.F.2002). In addition to a lead opinion, written by Chief Judge Craw-

ford and joined by Judge Gierke, there were three separate opinions reflecting the concurring and dissenting views of the other judges. But all of the judges were in agreement with Chief Judge Crawford's conclusion that admission of a stipulation of fact "contained in the record of trial of a previous court-martial . . . does not qualify as 'evidence of a conviction' under RCM 1001(b)(3)." *Id.* at 273. Judge Baker, joined by Senior Judge Sullivan, also concluded that R.C.M. 1001(b)(3) "appears to contemplate, literally, evidence *of* conviction—the fact of conviction—and not an accounting of the underlying acts leading to conviction." *Id.* Judge Baker, however, opined there might be circumstances when the underlying acts might be admissible. He concluded that this Court's decision

> went too far in holding that the underlying details of a prior conviction are not admissible under RCM 1001(b)(3), even when necessary to explain the nature of the offense. . . . A stipulation of fact from a prior conviction may be admissible under RCM 1001(b)(3) where the military judge determines the stipulation is *necessary* to explain the nature of the prior conviction. However, this should only occur on those rare occasions when the promulgating order or Form 493 does not clearly state the prior offense. *Further, it may not be used as a vehicle to develop the facts behind the prior conviction.* Finally, even when reasonably necessary to understand the nature of the prior conviction, the military judge must still determine whether, in such a context, the stipulation's probative value outweighs any unfair prejudice to the defendant.

*Id.* at 273–74 (emphasis added).

Although the challenged evidence in the case before us is not a stipulation of fact, the rationale underlying the opinions in *Douglas* is persuasive. Moreover, even if we followed the limited exception proposed by Judge Baker, the videotape and the testimony from the arresting police officer would still be inadmissible in the government's sentencing case-in-chief. The offenses are clearly listed—and are understandable as written—in both the Lowndes County court documents and the letter of reprimand.

We conclude the military judge erred in admitting the videotape and plainly erred in admitting the testimony of the police officer. We will consider the prejudicial effect of these errors after examining the issue of uncharged misconduct.

## UNCHARGED MISCONDUCT

### Background

█ Trial counsel also called Master Sergeant Hollinshead, the appellant's first sergeant, to testify in the government's sentencing case-in-chief. Trial counsel's direct examination follows:

Q. [W]hat did you know about Airman Malhiot?

A. I knew that Airman Malhiot had been involved in a situation dealing with drugs, that he was pending [a] court date and that he was basically being assigned to bay orderly duties during the interim until it came around.

Q. What is bay orderly duty?

A. Bay orderly is basically the dormitories where the airmen live at. There are two to three people per dormitory required to be on what they call bay orderly, and basically what they do is they keep the grounds and the common areas and do menial tasks around the dorms to help out the dorm manager.

Q. How is his performance with regards to that?

A. I've had numerous occasions where I've had to have discussion[s] with Airman Malhiot based on his performance being sub-standard.

Q. What do you mean by sub-standard?

A. There was [sic] a couple of occasions when I went over to the dormitory checking on other things, couldn't find Airman Malhiot who was supposed to be on duty at the time—

DC [Defense Counsel]: Your Honor, at this point I would object to this under [Mil. R. Evid.] 404(b). I mean if he would like to lay a foundation as far as rehabilitative potential, I think he's well on his way to doing that, but—

TC: Your Honor, this goes towards his characterization of service and duty performance. It's not being offered to show propensity of the crimes charged.

DC: I don't believe that's directly under [R.C.M.] 1001(b), and I think it goes well beyond the impact of this offense on the mission.

MJ [Military Judge]: Clearly, the members must consider the rehabilitative potential of the accused. Just as clearly, the conduct of the accused since being initially discovered and charged is pertinent under the applicable not only the R.C.M.'s, but M.R.E.'s. At this point I'll overrule the objection. You may continue, [trial counsel].

Q. Sergeant Hollinshead, just to clarify, did this conduct occur before or after the charged conduct in this case?

A: It was after, sir.

Q. Now, you said you've had some problems with him. You didn't get to finish your answer, could you go ahead and please explain what problems you've had?

A. I've had numerous occasions when I've had to go over to the dormitory for various reasons, which is part of my job as the first sergeant to maintain my dorms. And, on numerous occasions I've gone over for other things being in the dorm and looked for Airman Malhiot who should be on duty, and there's been a couple of occasions that I've actually found him either in his room when he should be on duty or actually about two weeks [ago] I found him napping in one of the dayrooms on a couch.

Q. Was he on duty at that time?

A. Yes, sir, he was on duty.

Q. What have you done to try to correct that behavior?

A. Sir, basically what I've done on these matters has been verbal counseling. Based on our job we've got a large string of things that we can do. Administrative is one of them, but being the fact that Airman Malhiot was already pending a court date for much more serious offenses, I found it almost a, I don't want to say a waste of time, but it was more effort than what it would do because we also tried

administrative actions with Airman Malhiot on a couple of other things, and the behavior had not changed.

Q. What kind of administrative actions had you tried?

A. We had done a letter of reprimand sir, with a[n] unfavorable information file for an incident where he was involved downtown in an accident drinking.

Q. Anything else that you tried with him?

A. Not other than the verbal counseling, sir. I'm sorry sir, prior to me being in the squadron, there are some other instances I believe in his PIF [Personal Information File], but that was prior to my being there as his first sergeant.

### Discussion

This testimony runs afoul of R.C.M. 1001(b)(5). Admittedly, the appellant's poor performance as a bay orderly while pending trial is logically relevant to the character of his service and his rehabilitative potential. But it is not legally relevant. The law in this area is well settled and is summarized in the Discussion to R.C.M. 1001(b)(5)(D):

On direct examination, a witness or deponent may respond affirmatively or negatively regarding whether the accused has rehabilitative potential. The witness or deponent may also opine succinctly regarding the magnitude or quality of the accused['s] rehabilitative potential; for example, the witness or deponent may opine that the accused has "great" or "little" rehabilitative potential. The witness or deponent, however, generally may not further elaborate on the accused's rehabilitative potential, such as describing the particular reasons for forming the opinion.

See also United States v. Aurich, 31 M.J. 95, 96 (C.M.A.1990) (R.C.M. 1001(b)(5) "does not permit a full, logical explanation of the witness' opinion except on cross-examination"). The first sergeant's testimony exceeded the bounds of R.C.M. 1001(b)(5) not only by including specific instances of misconduct, but also by opining on the futility of undertaking additional rehabilitative effort to get the appellant to comply with duty requirements.

The government argues alternatively that the first sergeant's testimony was admissible under R.C.M. 1001(b)(5)(A) because it was more focused on the appellant's duty performance rather than his uncharged misconduct. Even if this accurately characterizes the content of the first sergeant's testimony, R.C.M. 1001(b)(5)(A) requires testimony "concerning the accused's previous performance as a servicemember" to be in the form of an opinion, unless it is submitted in the form of a document, in which case the document must come from the "personnel records of the accused" as required by R.C.M. 1001(b)(2). Because the military judge ruled contrary to R.C.M. 1001(b) and long-established case law, we conclude the military judge abused his discretion.

### PREJUDICE

■ We must next examine whether these errors materially prejudiced the substantial rights of the appellant. Article 59(a), UCMJ, 10 U.S.C. § 859(a). We will evaluate the impact of the erroneously admitted sentencing evidence by weighing: "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." See United States v. Kerr, 51 M.J. 401, 405 (C.A.A.F.1999).

■ Neither side's sentencing evidence predominated. Aside from the erroneously admitted evidence, the government's sentencing case included the facts and aggravating circumstances surrounding the appellant's drug offenses. A stipulation of fact described the date, place, and circumstances of the appellant's drug offenses, and a copy of the appellant's written confession was attached to it. The government also called a pharmacist to discuss the physical effects of drug use. In addition to "evidence of" a civilian conviction, the government submitted a document reflecting a counseling the appellant received earlier in his career for being late to work. All in all, it was a moderately strong case.

The appellant also had a moderately strong case. Major Nancy Weingartner, a very experienced social worker, testified about the appellant's participation in the Al-

cohol and Drug Abuse Prevention and Treatment Program. She concluded that his rehabilitation potential was "good to excellent." Her opinion was based on his self-identification of an alcohol problem prior to his misconduct coming to light. In addition, the appellant's mother testified on his behalf concerning his family upbringing and his plans for the future. The appellant made an unsworn statement apologizing for his misconduct and advising the court he had learned from his "terrible decisions." Finally, he offered numerous letters of support from family members and documents reflecting an abundance of accolades for his high school activities.

In gauging the materiality of the improper evidence, the government asserts that the challenged evidence would have been admissible to rebut the testimony of Major Weingartner. During cross-examination, the government did, in fact, ask Major Weingartner about whether she was aware of the prior conviction and its underlying details. Additionally, trial counsel asked Major Weingartner if she was aware the appellant had been sleeping on the job. This was permissible cross-examination. However, R.C.M. 1001(b)(3) and (5) do not authorize *extrinsic* evidence to test the foundational basis of a rehabilitation witness's opinion. *United States v. Wingart*, 27 M.J. 128, 133–36 (C.M.A.1988). *See also* Mil. R. Evid. 608(b). The government relies on *United States v. Hallum*, 31 M.J. 254 (C.M.A.1990) for the proposition that extrinsic evidence could be used to rebut Major Weingartner's testimony. The accused in *Hallum* presented character statements in the form of unsworn declarations from his co-workers. Our superior court approved the use of extrinsic evidence under those circumstances because the defense counsel opened the door "regarding the accused's good military character utilizing witnesses who could not be cross-examined about their opinions. The Government was properly afforded the opportunity to respond." *Id.* at 256. In the present case, the government did have an opportunity to test Major Weingartner's opinion on cross-examination, and thus the rationale of *Hallum* does not apply. The videotape and in-court testimony of the police officer were not ad-

missible to further explain the civilian conviction, and the first sergeant could not have been called to testify about the appellant's acts of uncharged misconduct while performing bay orderly duties.

As to the underlying facts of the civilian conviction, the government suggests that the prejudicial impact of this evidence was limited because the information was already before the court members through other documents. However, the "quality" of the inadmissible information was quite high. As the military judge noted, the videotape was "real, real, real bad." The police officer's testimony was similarly influential. He provided a "play by play" commentary on the appellant's 100 mile-per-hour chase through residential streets, and at one point opined that the appellant was attempting to flee the scene.

The government also suggests that the impact of the videotape and the police officer's testimony was not unduly prejudicial because the military judge gave the following limiting instruction:

> Although you must give due consideration to all matters in mitigation and extenuation, as well as those in aggravation, bear in mind that the accused is to be sentenced only for the offenses for which he has been found guilty today. You are not to punish him for his conduct which occurred on 13 and 14 March 2002. The accused has already been convicted in a civilian court for that conduct, and such evidence may be considered solely as to the accused's rehabilitative potential.

*See United States v. Hall,* 29 M.J. 786, 789 (A.C.M.R.1989), *aff'd,* 31 M.J. 431 (C.M.A. 1990). Under different circumstances, such an instruction would have a substantial remedial effect. Unfortunately, the trial counsel's sentencing argument did much to dilute the merit of this argument. Trial counsel discussed the events shown in the videotape as follows:

> You've seen the tape, you know what it's like. This is not somebody who at the time was crying and expressing how sorry he was, he was out of control. He is out of control, and unless you stop him, unless

you sit on him and keep him from going back in, well, anything is possible, but we've seen what the evidence supports.

Moreover, the limiting instruction did not address the first sergeant's testimony about the appellant's performance as a bay orderly. To make matters worse, the trial counsel's sentencing argument relied heavily on the first sergeant's testimony about finding the appellant sleeping on the job—indeed, trial counsel incorporated this incident as a key theme by repeatedly arguing for the need to impose a sentence that would "make him wake up and turn himself around."

This case is a textbook example of the risk of unfair prejudice, confusion of the issues, and needless presentation of cumulative evidence. *See* Mil. R. Evid. 403. We further conclude that this case falls within the ambit of the doctrine of cumulative errors. *United States v. Banks,* 36 M.J. 150, 170 (C.M.A. 1992). In view of the cumulative nature of these errors in a trial before military members, we hold that the appellant's substantial rights as set forth in R.C.M. 1001 were materially prejudiced. Article 59(a), UCMJ.

## REMEDY

Having concluded that admission of the videotape, as well as the testimony of the police officer and the first sergeant, was prejudicial error, we must decide whether to reassess the sentence or remand the case for a sentence rehearing. Our superior court has held that we can reassess a sentence to correct error under certain circumstances. In *United States v. Doss,* 57 M.J. 182, 185 (C.A.A.F.2002), the analysis was summarized as follows:

> In *United States v. Sales,* 22 MJ 305 (CMA 1986), this Court set out the rules for sentence reassessment by a Court of Criminal Appeals. If the court can determine that, absent the error, the sentence would have been at least of a certain magnitude, then it may cure the error by reassessing

the sentence instead of ordering a sentence rehearing. *Id.* at 307. A sentence of that magnitude or less "will be free of the prejudicial effects of error." *Id.* at 308.... If the court "cannot reliably determine what sentence would have been imposed at the trial level if the error had not occurred," then a sentence rehearing is required. *Id.*

The appellant asks for a sentencing rehearing because the sentence was unduly "harsh." We are highly confident we can reliably reassess the sentence in accordance with the established criteria. Mindful of the distinction between sentence appropriateness and sentence reassessment, and considering the circumstances of this case, we are persuaded that our sentence reassessment will cure the errors and no further action is required. We conclude that, absent the errors described above, the sentence would have at least consisted of a bad-conduct discharge, confinement for 8 months, total forfeiture of all pay and allowances for 8 months, and reduction to the grade of E–1. We further conclude the sentence is appropriate.

## CONCLUSION

The findings and the sentence, as reassessed, are correct in law and fact and no error prejudicial to the appellant's substantial rights occurred. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Reed,* 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the findings and the sentence, as reassessed, are

AFFIRMED.