UNITED STATES, Appellee,

v.

Jerry D. WIRTH, Corporal, U.S. Marine Corps, Appellant.

No. 43616.
NMCM 81–1021.

U.S. Court of Military Appeals.

July 23, 1984.

For Appellant: *Lieutenant Commander Richard K. Delmar,* JAGC, USNR (argued).

For Appellee: *Lieutenant Commander William A. Dorsey,* JAGC, USNR (argued); *Commander W. J. Hughes,* JAGC, USN (on brief); *Captain T. C. Watson, Jr.,* JAGC, USN.

*Opinion of the Court*

EVERETT, Chief Judge:

Appellant was found guilty of three specifications of indecent acts with a female under the age of sixteen, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. In particular, a general court-martial composed of members found that he had fondled with his hand the vaginal areas of three different young girls with the intent to gratify his lust. *See* para. 213*f*(3), Manual for Courts-Martial, United States, 1969 (Revised edition). Appellant was sentenced to a bad-conduct discharge, 2 years' confinement at hard labor, and reduction to the lowest enlisted pay grade. The convening authority approved these results, and the United States Navy-Marine Corps Court of Military Review affirmed.

This Court granted the following issue raised by appellant:

WHETHER THE ADMISSION INTO EVIDENCE DURING THE GOVERNMENT'S CASE IN REBUTTAL OF MRS. TAYLOR'S TESTIMONY REGARDING APPELLANT'S ALLEGED SEXUAL PRACTICES WITH HIS WIFE WAS IRRELEVANT HEARSAY, AND PREJUDICIALLY MISLEADING?

In addition, this Court specified the following issue for review:

WHETHER THE MILITARY JUDGE ERRED IN FAILING TO INSTRUCT THE COURT MEMBERS ON THE LIMITED PURPOSE FOR WHICH THEY COULD CONSIDER A PRETRIAL STATEMENT MADE BY THE ACCUSED TO GOVERNMENT WITNESS PAMELA TAYLOR IN REGARD TO THE SPECIAL CIRCUMSTANCES IN WHICH HE SOMETIMES "MADE LOVE" TO HIS WIFE.

Before addressing these issues, it is necessary to examine the trial context in which they arose.

## I

The Government in its case-in-chief called the three girls whom appellant was alleged to have fondled. Each testified that appellant touched her in the groin area. A fourth girl, the older sister of one of the alleged victims, also testified that she saw appellant touch each of the three girls underneath their pants with his hand. The Government also called Mrs. Taylor, the mother of one of the girls, who testified to her daughter's report concerning appellant's conduct. She further admitted to having an affair with appellant but stated that it ceased after she heard her daughter's story. Furthermore, she testified that she informed appellant and his wife about her daughter's complaint and overheard appellant telling her daughter that it would not happen again. Sergeant Taylor was also called by the Government, and he testified to confronting appellant with his daughter's accusation. Other witnesses were called who testified to various events and circumstances in the neighborhood prior to and after the alleged offenses.

The theory of the defense, pursued on cross-examination of the government witnesses and direct examination of its own witnesses, was that appellant was a victim of Mrs. Taylor's revenge for stopping their affair and refusing to join in group sex with the Taylors. The defense attempted to show that the children who testified in this case were coached by Mrs. Taylor to fabricate their testimony. In addition the defense called several witnesses who testified to appellant's gentle character with children and his good character for veracity.

The defense also called Mr. Troy Williams to the stand. He testified that he was a former Marine discharged in August 1978, prior to the alleged crimes. Mr. Williams stated that he was a good friend of appellant, with whom he had worked, and that he had shared an apartment with the latter's family for two and a half years. He indicated that he had observed appellant around children and noticed no improprieties. The following testimony was then adduced by the defense:

Q  Why would he write a letter to you about it?

A  Jerry and I are very close, much closer than probably a pair of brothers. We talk about things that with other people we just wouldn't mention.

Q  What occasions did you have to share things like this? Were you ever alone for periods of time together and have an opportunity to talk or anything like that?

A  While we were roommates, it's about an hour and a half drive back and forth to work from Long Beach. We lived there. That was quite a bit of time to talk. There's plenty of time in the field when you're just sitting and waiting for instructions. Yes, I'd say we had plenty of time to talk.

Q  During those periods of time that you talked, did you ever talk about personal things?

A  Yes, sir.

Q  During these personal conversations did you talk about your sexual preferences, fantasies, problems you may be having, things like that?

A  Yes, sir.

Q  Was there anything that you ever heard from Corporal Wirth, or even gained a hint that he might in any way have any inclinations towards sexual fantasies about children?

A  No, sir.

Q  What did he seem to be interested in?

A  Corporal Wirth is basically interested in mature women with mature minds and bodies.  Children—when he told me, I thought it was funny, but he was serious, and it was out of character.

Appellant's wife then was called to the stand by the defense.  She testified concerning the circumstances surrounding the neighborhood children coming to her house and the Taylors' forward approach to sexual matters.  Thereafter, three character witnesses were called by the defense who testified that in their opinion appellant was a truthful person.

At this point in the trial, appellant took the stand and testified as follows:

Q  Corporal Wirth, you've sat here, and you've heard all the little girls testify.  You've heard all the charges against you read to the court.  Did you abuse any of those little girls?

A  Sir?

Q  Did you abuse any of those little girls?

A  No, sir.

Q  You've heard all of their testimony about things that you did, games that you played.  During any of those games, did you intentionally touch any of those little girls?

MJ: Excuse me.  Would you hold it just a minute here?  Bailiff, would you ask the people outside to hold it down just a bit?

BY MR. MCKENZIE:

Q  Corporal Wirth, did you ever intentionally touch any of those little girls?

A  No, sir.

Q  Did you ever become sexually aroused during any of your play with any of these children for any reason?

A  No, sir.

The Government then cross-examined appellant.  After questioning him about the games he played with these children, the following testimony occurred:

Q  And you would carry the children into your cave?

A  And shut the door, yes, sir.

Q  And lie them on the bed?

A  Yes, Sir.

Q  What did the monster do with children in the cave?

A  Tickle them, sir.

Q  Where would you tickle them?

A  Their sides, their legs.

Q  Where else?

A  Nowheres, sir.

Q  Just on the sides and the legs.  Did you make a point of not tickling them down near their sexual organs?

A  I didn't make a point out of it, no, sir.  I didn't make a point out of not tickling them down there, I just never did.  Most the time I was too busy running back and forth grabbing kids.

Q  So when Carey Hodge demonstrated how you touched her, and she cupped her hand and moved her fingers and said you were touching her down in the groin area, you certainly weren't trying to tickle her.

MR. MCKENZIE: Objection, your Honor.  Argumentative.

MJ: Overruled.

WIT: I never touched her down in the groin area, sir.

The Government later continued its cross-examination of appellant, as follows:

Q  Corporal Wirth, you said—true or false—that you've never been sexually aroused or sexually excited in the touching of little girls?

A  That's true, sir.  I never have.

Q  And the idea of doing that never excited you or appealed to you?

A  Not in a sexual sense, no, sir.

Q  Well, is it fair to say, then, that it would be repulsive to you, the idea of having sex with a little girl?

A  Yes, sir.

Q.  You know what I mean by the word "repulsive"?

A  Yes, sir, I believe so.  It means disgusting.

Q  Does that idea sound disgusting to you?

A  Yes, sir, it does.

Q  Something you would never want to do?

A  Yes, sir.

Q  Did you ever want to make love to an adult woman while she was dressed up like a little girl?

MR. MCKENZIE: Your Honor, I'm going to object to that. If nothing else, we're getting into the Fifth Amendment.

MJ: Well, excuse me. What is your objection basis?

MR. MCKENZIE: Relevancy and the Fifth Amendment to the Constitution. The witness has—the man is on the witness stand—

MJ: Well, excuse me. Is that the basis? Do you have any other bases?

MR. MCKENZIE: I have argument. That's a degrading question, your Honor.

MJ: I see. Both—All those bases are overruled. You may continue.

BY THE TRIAL COUNSEL:

Q  Did you ever want to make love to a woman while she was dressed up like a little girl?

A  No, sir.

Q  Did you in fact ever make love to a woman while she was dressed up like a little girl?

A  No, sir.

Q  You're absolutely sure about that?

A  Yes, sir.

Q  So we can conclude that you certainly never made love to your wife while she was dressed up like a little girl?

A  Yes, sir, you can conclude that.

Q  Can we also conclude that you never told anyone that you made love to your wife while she was dressed up like a little girl?

A  Yes, sir, we can.

Q  Did you ever tell anyone that you liked to make love to your wife while she was dressed up like a little girl and she would act like a little girl?

A  No, sir, I never did.

Q  Did you ever say anything that anyone could have misconstrued as saying that you like to make love to your wife while she was dressed up like a little girl?

A  Possibility [sic] that I—I've—I like to have my wife well-dressed when we do make love, yes, sir, but not as a little girl, dressed up as a woman. Little girls don't wear garter belts, sir.

The cross-examination of appellant was concluded and the defense rested. The Government in rebuttal recalled Mrs. Taylor to the stand. After denial of a defense objection to her testimony on the grounds that it was irrelevant, immaterial, hearsay, uncharged misconduct, and improper rebuttal, she testified as follows:

Q  Mrs. Taylor, my last question to you had been to the subject—Did the subject of sex come up during the conversation, and you indicated what?

A  Yes, sir, it had.

Q  Briefly, how had it come up?

A  Corporal Wirth was driving, and I was in the passenger seat, and he was trying to touch me and grab me, and we started joking around and laughing, and he started speaking about some of his sexual preferences when he and his wife were together.

Q  Did any of those preferences relate in any way to children?

A  Yes, sir, it did.

Q  What did he tell you specifically?

A  He said that sometimes his wife, Brenda, would dress up like a little girl, and he would spank her, and they would make love.

Q  Did he say at all what else Mrs. Wirth would do?

A  He said that sometimes she liked to be tied up—

Q  I'm referring to as a little girl?

A  No, sir, he didn't.

In surrebuttal, the defense called appellant's wife to the stand. She denied that her husband ever requested, suggested, or discussed her dressing up as a child. Appellant, too, was recalled and denied such

conduct or making such a statement to Mrs. Taylor.

## II

At the outset, a question exists as to what rules of evidence are applicable to this court-martial. Appellant was arraigned on August 27, 1980, prior to the effective date of the new Military Rules of Evidence (September 1, 1980). *See* Executive Order 12198 (March 12, 1980). The military judge and counsel for both parties recognized this fact in connection with certain pretrial motions concerning the competence of expected witnesses. Defense counsel indicated a preference for resolution of these matters under the new rules of evidence but requested that the old rules also be considered.

The granted issues arose at the trial on the merits in October 1980. No objection was made at trial or on appeal to the resolution of these issues on the basis of the new Military Rules of Evidence. In view of the absence of any contention by the defense that he was prejudiced by the application of these rules to the granted issues, the understanding of the parties, and the wording of Executive Order 12198, this case can be resolved on the basis of the new Military Rules of Evidence. Article 59(a), UCMJ, 10 U.S.C. § 859(a).

## III

The defense initially contends that the challenged testimony of Mrs. Taylor was irrelevant. It must be recognized that this evidence was introduced by the Government as a matter in rebuttal. *See* Mil.R.Evid. 611 and Analysis of Rule 611, Appendix 18, Manual, *supra*. "It is well settled that the function of rebuttal evidence is to explain, repel, counteract or disprove the evidence introduced by the opposing party." *United States v. Shaw*, 9 U.S.C.M.A. 267, 271, 26 C.M.R. 47, 51 (1958) (Ferguson, J., dissenting). In a general sense, rebuttal refers to the order of presenting evidence at trial and, within the discretion of the trial judge, it is normally restricted to the proponent's presentation

of "evidence ... made necessary by the opponent's case in reply." 6 Wigmore, *Evidence* § 1873 (Chadbourn rev. 1976) (footnote omitted). Accordingly, the relevance of the Government's rebuttal evidence must be determined in light of evidence first introduced and issues initially raised by the defense at this court-martial. *Id.* *See generally* Mil.R.Evid. 401 and 402.

As indicated earlier, the defense in its case-in-chief produced evidence indicating that appellant's sexual preferences did not include children, conveying the implication that appellant's state of mind during his activity with the children was not lustful. For instance, Mr. Troy Williams testified that during his frequent, lengthy, and frank conversations with appellant concerning the latter's sexual preferences, appellant never said or hinted that he had any inclinations toward sexual fantasies about children. He also stated that appellant was basically interested in mature women with mature minds and bodies and that sexual interest in children was out of character.

Appellant himself, on direct examination, stated that he never became sexually aroused during any of his play with any of the children for any reason. As just indicated, all this testimony pertained to appellant's state of mind at the time of the alleged offense and tended to refute the Government's circumstantial evidence that he had touched these children with intent to gratify his sexual desires. *See* para. 213 *f*(3), Manual, *supra*.

In this context, the Government called as a rebuttal witness Mrs. Taylor who, it will be recalled, was appellant's former lover and the mother of one of the alleged victims. Obviously, trial counsel proceeded on a premise that Wirth's alleged statement to Mrs. Taylor that "his wife ... would dress up like a little girl, and he would spank her, and they would make love" indicated that he had a state of mind consistent with sexually molesting little

girls.[1] While this logic may seem reasonable, we would be more persuaded on the relevance of this evidence if the record contained expert testimony of some type that a desire to have an adult lover occasionally dress like a little girl is related to the sexual deviation with little girls of which appellant was accused.

Nonetheless, from our examination of the record—which in some respects reads like the script of a lurid soap opera—it is clear that the judge's reception into evidence of Mrs. Taylor's testimony about ap-

pellant's remarks to her did not dictate the outcome of the trial.[2] Accordingly, we are convinced that there is no fair risk that appellant was substantially prejudiced by this evidence.

## IV

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Judge FLETCHER and Senior Judge COOK concur.

---

1. Although Mrs. Taylor's testimony "rebutted" appellant's denial that he ever wanted to make love to a woman dressed like a little girl or that he ever, in fact, did so, these denials came during cross-examination and in response to questions to which defense counsel unsuccessfully objected. Without some sort of expert testimony, *see* opinion, *infra*, we are as hesitant about the relevance of these questions as we are about Mrs. Taylor's "rebuttal" testimony. It may be argued—although no proper foundation was laid for this use—that Mrs. Taylor's testimony also "rebutted" Mr. Williams' testimony about appellant's sexual preferences. However, Mr. Williams' assertion that Wirth was "basically interested in mature women with mature minds and bodies" is not "rebutted" by a claim that appellant allegedly sometimes wanted his wife—presumably, a mature woman with a mature mind and body—to dress like a child.

2. This conclusion renders consideration of the specified issue unnecessary.