# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39866 (f rev)**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Theodore W. BARNABY**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 19 October 2021

———————————

*Military Judge*: Charles G. Warren (arraignment); Jennifer E. Powell.

*Sentence:* Sentence adjudged 12 December 2019 by GCM convened at Schriever Air Force Base, Colorado. Sentence entered by military judge on 7 January 2020: Dishonorable discharge, confinement for 118 months, and reduction to E-1.

*For Appellant:* Major Alexander A. Navarro, USAF; Bethany L. Payton-O'Brien, Esquire.

*For Appellee*: Lieutenant Colonel Matthew J. Neil, USAF; Major Amanda L.K. Linares, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and MEGINLEY, *Appellate Military Judges*.

Judge MEGINLEY delivered the opinion of the court, in which Judge RICHARDSON joined. Senior Judge POSCH filed a separate opinion concurring in part and concurring in the result.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

MEGINLEY, Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, in accordance with his pleas and pursuant to a pretrial agreement (PTA), of one specification of sexual abuse of WB, a child who had not obtained the age of 12 years, by touching her genitalia through her clothing on divers occasions, and one specification of sexual abuse of WB, a child who had not attained the age of 16 years, by touching her anus with his penis, both in violation of Article 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b.[1] Appellant was also charged with another specification of sexual abuse of WB, by penetrating WB's anus with his penis; that specification was withdrawn and dismissed with prejudice after arraignment.

A panel consisting of officer and enlisted members sentenced Appellant to a dishonorable discharge, confinement for 14 years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The military judge credited Appellant with 13 days against his sentence for time he spent in pretrial confinement. Consistent with the terms of the PTA, the convening authority disapproved the adjudged confinement that exceeded 118 months, disapproved adjudged forfeitures, approved deferral of automatic forfeitures from 14 days from the date the sentence was adjudged until the date the entry of judgment (EoJ) was signed by the military judge, and directed all automatic forfeitures be waived for a period of six months for the benefit of Appellant's spouse and children. The convening authority took no other action on the sentence.

During this court's initial review of Appellant's case, we determined that a written ruling by the military judge, Appellate Exhibit IX, was missing from the record of trial. On 2 February 2021, exercising the court's independent responsibility to review the record under Article 66(d), UCMJ, 10 U.S.C. § 866(d), we returned the record of trial to the Chief Trial Judge, Air Force Trial Judiciary, for action consistent with R.C.M. 1112 to resolve the matter of the missing exhibit. On 5 February 2021, the military judge signed a certificate of correction, and on 16 February 2021, the record of trial was returned to the court for completion of appellate review. We find the defect in the record of trial has been corrected.

---

[1] All references in this opinion to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2016 ed.). The charges and specifications were referred to trial after 1 January 2019; accordingly, all other references to the UCMJ, Military Rules of Evidence, and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.). *See* Exec. Order 13,825, §§ 3, 5, 83 Fed. Reg. 9889, 9889–90 (8 Mar. 2018).

Appellant raises six issues on appeal:[2] (1) whether the military judge abused her discretion in denying a defense challenge for cause of a court member "who expressed a predisposition to look down upon those who commit criminal offenses;" (2) whether the military judge erred by taking judicial notice in sentencing, over defense objection, of a government program that allows payment of transitional compensation benefits for abused dependents; (3) whether the military judge erred by admitting, over defense objection, sentencing evidence regarding rehabilitation programs in confinement facilities; (4) whether trial counsel engaged in prosecutorial misconduct by making improper arguments in sentencing; (5) whether a government prohibition against Appellant having contact with his minor children and spouse while in confinement violates his constitutional rights, and with respect to contact with his spouse, amounted to cruel and unusual punishment; and (6) whether Appellant's speedy trial rights were violated under R.C.M. 707.[3] Although not raised by Appellant, we also address whether the convening authority failed to take action on the sentence as required by Executive Order 13,825, § 6(b), 83 Fed. Reg. 9889, 9890 (8 Mar. 2018), and Article 60, UCMJ, 10 U.S.C. § 860 (*Manual for Courts-Martial, United States* (2016 ed.)).

We have carefully considered issues (4)[4] and (6) and find those issues do not warrant further discussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). With respect to Appellant's fifth assignment of error, to the extent Appellant claims we must grant sentence relief based upon conditions of post-trial confinement for violations of the Eighth Amendment[5] and Article 55, UCMJ, 10 U.S.C. § 855, we find no error to correct on appeal because those conditions did not render the sentence incorrect in law. *United States v. Guinn*, 81 M.J. 195, 202–04 (C.A.A.F. 2021); *United States v. Erby*, 54 M.J. 476, 478 (C.A.A.F. 2001). To the extent Appellant asks that we grant relief based on this court's Article 66(d), UCMJ, sentence appropriateness authority, we find relief is not authorized because information about the complained-of conditions is outside the record. *United States v. Willman*, __ M.J. __, No. 21-

---

[2] We reordered Appellant's assignments of error.

[3] Appellant personally asserts issue (6) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[4] As to issue (4), Appellant's trial defense counsel did not object to assistant trial counsel's statements in argument. Because there was no objection at trial, we review for plain error. *United States v. Halpin*, 71 M.J. 477, 479 (C.A.A.F. 2013). After a thorough review of Appellant's assignment of error, we are confident Appellant was sentenced based on the evidence and reasonable inferences fairly derived from such evidence. *See United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014). We find no error that materially prejudiced Appellant's substantial rights in trial counsel's sentencing argument.

[5] U.S. CONST. amend. VIII.

0030, 2021 CAAF LEXIS 697 (C.A.A.F. 21 Jul. 2021); *United States v. Jessie*, 79 M.J. 437, 444 n.9 (C.A.A.F. 2020); *see also Matias*, 25 M.J. at 361.

Finding no error that materially prejudiced Appellant's substantial rights, and following this court's Article 66(d), UCMJ, mandate to affirm only so much of the findings and the sentence as we find, on the basis of the entire record, should be approved, we affirm the findings and the sentence.

## I. BACKGROUND

Appellant entered active duty service in 2009. In 2011, while stationed in Alaska, Appellant married his wife, AB. AB had a child, WB, from a previous relationship, who was born in 2007. Appellant adopted WB in April 2013. Appellant and AB had two more children, and in 2016, the family moved from Alaska to Colorado.

Between March 2018 and August 2018, Appellant committed lewd acts against WB by touching her vagina through her underwear with his hand. During Appellant's providence inquiry at trial, he stated he touched WB "about every other week over that six month period" when WB was under the age of 12. Appellant explained, "We'd watch [television] together on my phone, either cartoons or a movie . . . in her bed. With one hand I would hold the phone up so [WB] could see it and with the other hand I would touch her genitalia through her underwear."

Appellant further agreed to a stipulation of fact and we adopt those facts in our review. Appellant stipulated that when he entered WB's bedroom, he would close the door and lay behind WB on her bed. After lying in bed, Appellant would "spoon" WB and lift her legs apart as she lay on her side. Appellant would then place his hands between WB's legs in the area of her crotch. With his hand there, Appellant would rub WB's genitalia. Appellant would not speak to WB when he did this, but after nearly every occasion, Appellant would tell WB not to tell anyone about him touching her genitalia. Appellant also stipulated that on at least two occasions, he got down on his knees and apologized to WB, "telling her that it was not her fault and that daddy was broken."

Appellant further stipulated that on 18 August 2018, he was at home with his children while his wife was out of the house. Also in the home were SR, Appellant's mother-in-law, who was visiting the family, and CR, Appellant's sister-in-law, who was staying at the home. WB came into Appellant's bedroom to watch television with him. While lying in the bed, Appellant lowered WB's pants and underwear below her buttocks. After lowering her clothing, Appellant removed his penis from his pants and placed his penis between WB's buttocks. For approximately five minutes, Appellant rubbed his erect penis up and down between WB's buttocks and anus.

On this same day, according to Appellant's stipulation of fact, AB came home at approximately 1435 hours. Upon entering the house, she went into her bedroom, where she saw Appellant and WB under a blanket in the bed she shared with Appellant. AB noticed an open drawer in a nightstand where the couple kept sexual items and personal lubricants. AB asked Appellant what was going on. AB witnessed Appellant quickly move his hand away from WB's genital region. Appellant then jumped out from under the blanket as AB came toward him. Appellant was wearing a shirt and loose cotton pants with a fly opening in front; WB's pants and underwear were pulled down below her buttocks.

AB told WB to go get SR. Appellant told AB, "Please don't leave me. I love you. I don't know what's wrong with me. It won't happen again. Don't ruin my family," or words to this effect. Next, Appellant told AB to call the police; he then exited the home and went to the garage. While leaving the home, Appellant told SR, "I'm sorry, [SR], but I've been having inappropriate relationships with your granddaughter." AB called 911 and Appellant waited in their garage for the police to arrive.

When the local sheriff arrived, AB relayed what occurred. An emergency medical technician also arrived at the home and talked to WB. Appellant further stipulated, WB told the technician what occurred in the bedroom, stating that Appellant pulled down her pants and underwear before rubbing his penis on her buttocks. WB also told the technician that Appellant "could not get his penis in [her anus] no matter how hard he tried." WB was then transported to a local hospital for a sexual assault forensic examination (SAFE). During the examination, WB told the nurse that Appellant touched her vagina over the clothing multiple times during the two years since the family moved from Alaska to Colorado. Further, WB also told the nurse that Appellant attempted to put his penis in her buttocks earlier that same day, stating: "I was watching a show and I was laying down in mom's bed just relaxing. He comes up and pulls my pants down and pulls his pants down. Sticks his, tried to stick it up my butt and around that area."

As part of the SAFE, swabs were collected from WB's genital and anal areas. DNA analysis from both areas revealed the presence of male DNA. DNA analysis indicated that Appellant and his paternal male relatives could not be excluded as potential donors.

## II. DISCUSSION

### A. Denial of Challenge for Cause for Implied Bias

#### 1. Additional Background

Appellant asserts that the military judge abused her discretion "in denying the [d]efense challenge for cause of a member who expressed a predisposition to look down upon those who commit criminal offenses."

Appellant elected to be sentenced by a panel consisting of officer and enlisted members. During group voir dire, trial defense counsel asked the members whether anyone had an emotional reaction upon reading the charge of sexual abuse of a child. Captain (Capt) PC was one of the members who answered in the affirmative. On individual voir dire, trial counsel asked Capt PC to provide some additional context to this inquiry. Capt PC stated: "[F]or me it's any kind of criminal activity I have some sort of an emotional reaction to like any kind of violent crime, terrorism. Just me as an officer personally and being a service member I don't like to see that kind of thing happening generally." Capt PC further stated that his reaction was "more like disappointment that [criminal activity was] happening in [his] community." Capt PC told trial counsel that this disappointment resulted from his "general upbringing," stating that he was raised to "be a law-abiding citizen" and "not to participate in elicit [sic] activities." Capt PC further explained he had a predisposition to not engage in criminal activity.

Trial counsel asked Capt PC whether his disappointment in criminal activity would "play into [Capt PC's] decision-making process" in determining an appropriate sentence for Appellant. Capt PC replied, "No, sir. So I think that's part of our duty here is to separate yourself from all those predispositions. So I think I could be pretty fairly unbiased for everything that's going to occur." Capt PC also stated that the "nature of being in the Armed Forces" requires one to "separate yourself from your upbringing and any kind of predispositions to anything really" and "come in to it with [an] open mind and take all the facts as they are." Capt PC also agreed that he would follow the military judge's instructions regarding the law in the case and that he could give Appellant a "full, fair, and impartial hearing."

When questioned by trial defense counsel, Capt PC reaffirmed that he would look at Appellant's case objectively. Upon being asked whether his upbringing would play a role when he was thinking about sentencing decisions, Capt PC replied: "As far as fairness and honesty, yes. But nothing else really."

Trial defense counsel challenged Capt PC for cause. Trial defense counsel argued that Capt PC's disappointment in seeing criminal offenses in his community reflected "a general character of inflexibility," and under the implied bias standard, a member of the public would believe someone expressing Capt

PC's views "would not give a fair hearing to anybody, and certainly in this particular case, [Appellant], due to [Capt PC's] description of his reaction to the Charge and [Capt PC's] reasons for it." Trial counsel opposed the challenge, pointing out that Capt PC's responses indicated he did not have an inflexible attitude and that he would follow the military judge's instructions.

The military judge denied the challenge for cause. The military judge articulated she had the opportunity to observe Capt CP's demeanor and assess his credibility in his responses. The military judge considered the Defense's challenge under the implied bias standard and the mandate to liberally grant defense challenges in close cases, and stated, "In analyzing the [D]efense's challenge under implied bias, this court looked to the totality of the circumstances viewing [Capt PC's] answers objectively through the eyes of the public." The military judge found no implied bias. She noted Capt PC's reaction to the statement of the charges would, per his own description, "be a fairly, a pretty normal reaction to anything criminal." The military judge also found that Capt CP "didn't highlight anything specifically with regards to an offense against a child or any sexual-related offense," that Capt PC's general disappointment in crime happening in the community was based on his "general upbringing to be a law-abiding citizen," and that Capt PC understood "his responsibility to determine an appropriate sentence for the accused based solely on the evidence in this case." Appellant alleges the military judge erred. We are not persuaded.

### 2. Law

R.C.M. 912(f)(1)(N) provides that a member shall be excused for cause whenever it appears that the member "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality."

Implied bias is "viewed through the eyes of the public, focusing on the appearance of fairness." *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010) (quoting *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007)). Therefore, appellate courts employ an objective standard when reviewing a military judge's decision regarding implied bias. *United States v. Strand*, 59 M.J. 455, 458 (C.A.A.F. 2004). "The hypothetical 'public' is assumed to be familiar with the military justice system." *Bagstad*, 68 M.J. at 462 (citing *United States v. Downing*, 56 M.J. 419, 423 (C.A.A.F. 2002)). The military judge's determination regarding implied bias is based on the "totality of the circumstances particular to [a] case." *United States v. Terry*, 64 M.J. 295, 302 (C.A.A.F. 2007) (internal quotation marks omitted) (quoting *Strand*, 59 M.J. at 456).

In reviewing defense challenges for cause under the implied bias standard, military judges are required to follow the "liberal grant" mandate, which "supports the UCMJ's interest in ensuring that members of the military have their

guilt or innocence determined 'by a jury composed of individuals with a fair and open mind.'" *United States v. James*, 61 M.J. 132, 139 (C.A.A.F. 2005) (quoting *United States v. Smart*, 21 M.J. 15, 18 (C.M.A. 1985)). "[M]ilitary judges must follow the liberal-grant mandate in ruling on challenges for cause, but we will not overturn the military judge's determination not to grant a challenge except for a clear abuse of discretion in applying the liberal-grant mandate." *United States v. White*, 36 M.J. 284, 287 (C.M.A. 1993). "[I]n the absence of actual bias, where a military judge considers a challenge based on implied bias, recognizes his duty to liberally grant defense challenges, and places his reasoning on the record, instances in which the military judge's exercise of discretion will be reversed will indeed be rare." *Clay*, 64 M.J. at 277.

### 3. Analysis

Appellant claims on appeal that the military judge erred in denying the challenge for implied bias, arguing that a member of the public "would not be assured that [Capt CP] could set [his] admitted 'predispositions' aside and fairly adjudge a sentence for [Appellant]."

The military judge did not abuse her discretion in denying the Defense's challenge for cause against Capt CP on the basis of implied bias. The Government argues that "[a] predisposition for disappointment in criminal activity is not an implied bias" that would prevent a servicemember from serving on a court-martial panel. "Rather," the Government explains, "it is practically a prerequisite to serving in the military or participating as a member of American society. More concerning would be the member who is not disappointed in criminal activity." We agree with this position. Having examined the entirety of Capt CP's voir dire and allowing for the military judge's observations of Capt CP's demeanor and credibility, we find that the military judge did not err in denying the challenge for implied bias. We conclude that, viewed through the eyes of the public and focusing on the appearance of fairness, there was no demonstration of implied bias in Capt CP's responses to voir dire questions. On the contrary, his answers tended to show his willingness to decide a sentence based on the evidence presented and his belief in the fairness of the system.

The military judge referenced the liberal-grant mandate in denying the challenge for cause, and from our review of the record in its entirety, we conclude that her recitation of the liberal-grant mandate was not merely a perfunctory or talismanic reference and is worthy of some deference. The military judge recognized her duty to liberally grant defense challenges and placed her rationale on the record. The military judge appropriately considered the "totality of the circumstances," *see Terry*, 64 M.J. at 302, and we accordingly find no reason to disturb her ruling.

**B. Admission of Evidence Regarding Transitional Compensation**

**1. Additional Background**

Appellant argues that the military judge abused her discretion when, over a defense objection, she took judicial notice of a transitional compensation program and instructed the members thereon.

In sentencing, the Defense called AB, who testified about health and financial issues the family would face from the loss of Appellant's income if he were confined and who outlined the medical issues their children faced. AB testified, "I have a lot of medical bills. So it affects me. That's why we both work is because of the medical. We've always had that. I mean, this year alone I've spent six thousand dollars in medical [expenses] and I have TRICARE." AB further stated Appellant helped her out financially and took care of their biological children with their medical appointments and activities.

In his unsworn statement, conducted in the form of a question and answer with trial defense counsel, Appellant asked the members to consider the fact that he needed to be there for his family, stating: "My family needs me . . . . My son needs a dad. My daughters need a dad. My wife needs a husband and a provider. My oldest needs health insurance. My youngest needs health insurance. I need to be there to provide for them."

After the Defense rested its sentencing case, trial counsel moved the military judge to take judicial notice of laws and regulations that address transitional compensation to rebut AB's testimony and Appellant's unsworn statement.[6] Trial counsel argued the defense sentencing case suggested that AB needed "the financial support that would be provided by [Appellant's] pay, therefore implying to the members that maybe they shouldn't sentence [Appellant] to anything that would require him to lose money, such as forfeitures or a dishonorable discharge which would take away his pay at some point." Trial counsel noted that "the purpose of this request [was] simply to rebut the implication that the family would be without financial support if the members [gave] either one of those sentences." The Government proposed wording for the instruction in its motion, including:

> Under this [transitional compensation] program, if the Accused receives a punitive discharge or total forfeitures as part of his

---

[6] The attachments to the Government's judicial notice request included copies of 10 U.S.C. § 1059, *Dependents of members separated for dependent abuse: transitional compensation; commissary and exchange benefits*; 38 U.S.C. § 1311, *Dependency and indemnity compensation to a surviving spouse*; and Air Force Instruction 36-3012, *Military Entitlements*, Chapter 8, *Transitional Compensation for Abused Dependents* (23 Aug. 2019).

> sentence in this court-martial, the Accused's dependents *would be entitled* to compensation in an amount of $2,012 per month for a duration of 36 months.

(Emphasis added.)

Trial defense counsel responded by stating that by the Government's reasoning, the transitional compensation program "could be put in any case where there's a victim that has suffered by the hands of the accused." Trial defense counsel argued that there was nothing specific to this case to justify why the information should be judicially noticed. Trial defense counsel further argued that there would be a prejudicial effect to taking judicial notice of the program insofar as the military judge's instructions on the program "would be given a lot of weight by the members" and they might accordingly think about the program applying if they imposed "a certain type of sentence."

The military judge ruled she would take judicial notice of 10 U.S.C. § 1059 and Chapter 8 of Air Force Instruction (AFI) 36-3012, stating:

> [T]ransitional compensation is narrowly tailored. . . . [I]t deals with dependent abuse. And recognizing inferences and how the members could use this, there are instructions that the members are going to receive about using their common sense and knowledge of human nature and the ways of the world. . . . [B]y taking judicial notice under [Mil. R. Evid.] 202 and then the process under [Mil. R. Evid.] 201, where I instruct the members[,] it means they are permitted to recognize and consider those laws without further proof.
>
> So with that, I do intend to give the instruction of judicial notice to the members. The one proposed by the [G]overnment is supported by the law that they had provided, both 10 [U.S.C. §] 1059 and the AFI instruction. So, for example, the AFI instruction states that the duration is 36 months for transitional compensation, where the code had a right and left balance at up to 36 months. So with the Air Force it is, in fact, 36 months.

After the Government presented its rebuttal presentencing case, the military judge informed the members of the following without further objection by counsel for either party:

> I took judicial notice of Title X, United States Code, Section 1059 and Air Force Instruction 36-3012, Military Entitlements, Chapter 8. They establish a program known as transitional compensation. Under this program, if the accused receives a punitive discharge or a total forfeiture of all pay and allowances as part of his sentence in this court-martial, the accused's dependents

*will be entitled* to compensation in the amount of two thousand twelve dollars per month for a duration of 36 months. In addition to monetary compensation, the accused's dependents *will also be entitled* to commissary and exchange benefits, as well as medical coverage through TRICARE. This means you are permitted to recognize and consider those laws without further proof.

(Emphasis added).

Before the military judge closed the court for deliberation on sentence, she similarly instructed the members:

Under [the transitional compensation] program, if [Appellant] receives a punitive discharge or total forfeiture of all pay and allowances as part of his sentence in this court-martial, *the accused's dependents would be entitled* to compensation in an amount of [$2,012.00] per month for a duration of 36 months. In addition to monetary compensation, *the accused's dependents will also be entitled* to commissary and exchange benefits, as well as medical coverage through TRICARE. This means you are permitted to recognize and consider those laws without further proof.

(Emphasis added).

During sentencing argument, trial counsel argued:

The judge gave you an instruction about transitional compensation and in that instruction you learned that the family in this case . . . [is] entitled to up to three years of compensation. They can get up to a little more than two thousand dollars per month in the event that a punitive discharge is given. In that event they will also still maintain their access to the commissary and to the base exchange and they will still receive medical care through TRICARE. As for needing to be with his family, his family needs to be protected from him. His family, [WB], his daughter, needs protection from him.

The Defense did not object to this portion of trial counsel's argument. Further, after the military judge provided the instruction on judicial notice to the members, she twice asked trial defense counsel whether he had any objection to the instructions or requested other instructions. Both times, trial defense counsel responded that he did not.

### 2. Law

A military judge may take judicial notice of both adjudicative facts and law. Mil. R. Evid. 201 provides the substantive and procedural requirements for

taking judicial notice of an adjudicative fact. Mil. R. Evid. 202 provides the substantive and procedural requirements for taking judicial notice of law. Mil. R. Evid. 202(a) states that "[i]f a domestic law is a fact that is of consequence to the determination of the action, the procedural requirements of Mil. R. Evid. 201 [except as it pertains to instructions to members] apply." *See also United States v. Mead*, 16 M.J. 270, 272 (C.M.A. 1983). A military regulation is a proper subject of judicial notice. *United States v. Ayers*, 54 M.J. 85, 90 (C.A.A.F. 2000).

"We will review a military judge's decision whether to take judicial notice for an abuse of discretion." *United States v. Lutes*, 72 M.J. 530, 533 (A.F. Ct. Crim. App. 2013) (citations omitted). When judicial notice of facts are at issue, that discretion is abused when evidence is admitted based upon an erroneous view of the law." *Id.*; *see also United States v. Erickson*, 76 M.J. 231, 234 (C.A.A.F. 2017) (citation omitted) ("We review a military judge's decision to admit or exclude evidence for an abuse of discretion."). "A military judge abuses [her] discretion when: (1) the findings of fact upon which [she] predicates [her] ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if [her] application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

The transitional compensation program provides financial assistance to dependents abused by a servicemember who supports them and is later convicted at a court-martial; the program applies if the member is convicted of a dependent-abuse offense and the court-martial imposes a sentence including either a punitive discharge or forfeiture of all pay and allowances. AFI 36-3012, ¶ 8.2; *see also United States v. Lundy*, 63 M.J. 299, 302 (C.A.A.F. 2006) ("[T]he law also provides, in context, for transitional assistance to the abused dependents of a servicemember convicted at court-martial."). Payments are authorized for up to 36 months, starting on the date on which an Appellant's court-martial sentence is approved or the judgment is entered into the record. AFI 36-3012, ¶ 8.5. In order to receive approval for the transitional compensation benefit, the dependent would have to initiate a request under the provisions of AFI 36-3012, ¶ 8.7.

R.C.M. 1001(d)(2)(C) states that an "accused may make an unsworn statement and may not be cross-examined by trial counsel upon it or examined upon it by the court-martial. The prosecution may, however, rebut any statements of facts therein." "[T]he function of rebuttal evidence is to explain, repel, counteract or disprove the evidence introduced by the opposing party." *United States v. Wirth*, 18 M.J. 214, 218 (C.M.A. 1984) (internal quotation marks and

citation omitted). Rebuttal is "normally restricted to the proponent's presentation of evidence made necessary by the opponent's case in reply." *Id.* (internal quotation marks, alterations, and citation omitted).

### 3. Analysis

Appellant argues the military judge abused her discretion by taking judicial notice of the transitional compensation program. We find the military judge erred, but we find no prejudice.

The Government is permitted to rebut "matters presented by the defense," R.C.M. 1001(e), including "any statements of fact" in an accused's unsworn statement, R.C.M. 1001(d)(2)(C). We find evidence presented by Appellant about financial issues the family would face if he were confined opened the door to information about the availability of the transitional compensation program. Both AB and Appellant discussed the financial hardships their family would face as a consequence of Appellant's convictions. The clear implication from their in-court statements was the loss of income that would likely result from Appellant's confinement, dishonorable discharge, and/or forfeiture of Appellant's pay and allowances.

The military judge erred in the content of her instruction to the members. First, she informed them that Appellant's family "would" or "will" be entitled to certain benefits under the transitional compensation program. The record is silent as to whether AB was aware of the program. Even if she was aware, there is no indication AB had applied for benefits as allowed by law and regulation. The military judge's instruction left the members with the impression that AB would automatically receive these benefits, which was incorrect.

Next, our review leads us to believe the military judge mixed the concepts of judicial notice of law with judicial notice of fact. While the Government requested judicial notice of law, and the military judge granted the Government's motion, she provided an instruction that included facts as applied to Appellant's case. That is, she told the members the dollar amount and duration of benefits Appellant's dependents would receive; such specific information about Appellant is not located in the law. Thus, we would find the military abused her discretion in providing this instruction to the members.

Because Appellant did not object to the military judge's instruction to the members on transitional compensation, however, that issue is waived. "Whether an appellant has waived an issue is a legal question that this Court reviews de novo." *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (citing *United States v. Haynes*, 79 M.J. 17, 19 (C.A.A.F. 2019)). Where an appellant "affirmatively declined to object to the military judge's instructions and offered no additional instructions," he may thereby affirmatively waive any right to raise the issue on appeal. *Id.*

Although Appellant waived this issue, the United States Court of Appeals for the Armed Forces (CAAF) has made clear that the Courts of Criminal Appeals have discretion, in the exercise of their authority under Article 66, UCMJ, 10 U.S.C. § 866, to determine whether to apply waiver or forfeiture in a particular case, or to pierce waiver or forfeiture in order to correct a legal error. *See, e.g.*, *United States v. Hardy*, 77 M.J. 438, 442–43 (C.A.A.F. 2018) (quoting *United States v. Quiroz*, 55 M.J. 334 (C.A.A.F. 2001)); *United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016). Thus, even if Appellant waived this issue, this court must determine whether an error exists that merits piercing his waiver. *See Hardy*, 77 M.J. at 443.

Based on our review of the record and the error alleged, we have decided to pierce Appellant's waiver and assess for prejudice. The military judge's error was obvious, but not significant. Before trial counsel discussed transitional compensation, she argued the aggravating circumstances of Appellant's crimes against his adopted daughter, WB. She reminded the panel that Appellant would "use cartoons and Netflix to distract" WB as he committed his crimes against her, and how Appellant "subject[ed] his daughter to sexual abuse and then place[d] the responsibility to end that abuse onto [WB]." Trial counsel also discussed the medical testing WB had to undergo after Appellant's crimes were reported. Trial counsel calculated for the members why they should sentence Appellant to 17 years in confinement and a dishonorable discharge. Trial counsel's later argument about transitional compensation, quoted in its entirety above, comprised a small portion of her overall argument. Given the nature of Appellant's offenses, and considering the matters in extenuation and mitigation, we are confident the members would have adjudged a punitive discharge or total forfeitures—or both—such that Appellant's dependents would be entitled to transitional compensation, regardless of whether they heard evidence or received an instruction about that program. The erroneous instruction did not substantially influence the members' judgment on his sentence. Accordingly, we find Appellant suffered no prejudice.[7]

---

[7] Appellant also claims that transitional compensation is a collateral consequence of his adjudged sentence, arguing that the instruction "created an incentive for the members to include total forfeitures or a dishonorable discharge in order to ensure that the . . . family was provided with this compensation." On this point, we disagree. "A collateral consequence is '[a] penalty for committing a crime, in addition to the penalties included in the criminal sentence.'" *United States v. Miller*, 63 M.J. 452, 457 (C.A.A.F. 2006) (quoting BLACK'S LAW DICTIONARY, 278 (8th ed. 1999)). Given that Appellant's family could receive pay and benefits deposited into AB's bank account for up to 36 months, in spite of Appellant's criminal acts against his daughter, we do not view the transitional compensation program as a collateral consequence of Appellant's adjudged sentence.

## C. Admission of Evidence Regarding Rehabilitation Programs in Confinement Facilities

### 1. Additional Background

Appellant argues that the military judge abused her discretion when, over a defense objection, she allowed the Government to introduce evidence concerning rehabilitation programs in confinement facilities.

During Appellant's unsworn statement, Appellant outlined his long-standing addiction to pornography. Appellant stated that he needed "in-depth rehab[ilitation]" and that he researched in-residence options for sex addiction. Appellant stated the cost for one of these facilities was $68,000.00 and that TRICARE would "kind of" cover the costs.

After the Defense presented its sentencing case, trial counsel moved to introduce evidence concerning sex offender treatment programs available to prisoners at military confinement facilities. The purpose of this evidence, according to trial counsel, was to rebut "any implication" that the program Appellant found "would be the only program available and that [Appellant] would have to come out of pocket some amount of money to pay for treatment." The Government then provided the court an affidavit from Ms. PM, the Chief of the Clemency, Corrections, and Officer Review Division of Air Force Legal Operations Agency, in which Ms. PM described the types of programs available at confinement facilities and noted that specialized programs are available at long-term facilities.

Trial defense counsel objected to the introduction of the affidavit and its information because of the variables associated with where Appellant would be confined and whether Appellant would even be able to get into a program at the confinement facilities. Therefore, he argued the affidavit failed the Mil. R. Evid. 403 balancing test as it was "highly prejudicial" and would confuse the members. Trial defense counsel also argued the affidavit was improper evidence in rebuttal.

The military judge overruled the defense objection, finding the information in the affidavit was proper rebuttal evidence under R.C.M. 1001(e), as the affidavit explained treatment options available and rebutted statements made in Appellant's unsworn statement that he would have to pay for part of a treatment program. In conducting a Mil. R. Evid. 403 balancing test, she found this probative value was not substantially outweighed by "unfair prejudice or misleading or confusing the members."

Ultimately, the parties agreed to a stipulation of fact.[8] The parties agreed that confinement facilities operated by Department of Defense had various voluntary programs, and that while not every facility has every counseling and treatment program, "every facility provides access to counselors." The stipulation of fact noted that "any facility that cannot offer treatment programs must provide access to crisis intervention, drug and alcohol counseling, and pre-release counseling."

### 2. Law

"A military judge's decision to admit or exclude evidence at sentencing is reviewed for an abuse of discretion." *United States v. Carter*, 74 M.J. 204, 206 (C.A.A.F. 2015) (citing *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009)). "The admission of sentencing evidence is subject to the [Mil. R. Evid.] 403 balancing test and the substantive law and procedures set forth in Rule for Courts-Martial (R.C.M.) 1001." *Id.* at 206–07 (citations omitted). "A military judge is given 'wide discretion' and more deference if she properly conducts the balancing test and articulates her reasoning on the record." *Id.* at 207 (quoting *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)).

"[T]he availability of treatment programs is a collateral matter that should not be presented in aggravation for consideration in determining a proper sentence, unless presented in rebuttal." *United States v. McGovern*, No. ACM S31468, 2008 CCA LEXIS 485, at *3 (A.F. Ct. Crim. App. 15 Dec. 2008) (unpub. op) (citations omitted); *see also United States v. Flynn*, 28 M.J. 218, 221 (C.M.A. 1989) (noting that evidence of sexual offender rehabilitation program at confinement facility "is normally off limits" but was admissible where "the defense previously introduced evidence suggesting that incarceration for child molesters at" military confinement facilities was inappropriate).

### 3. Analysis

We find the military judge did not abuse her discretion in allowing information about treatment at confinement facilities to rebut Appellant's unsworn statement. By discussing a private treatment program and the use of TRICARE to pay for said program, Appellant suggested at least two propositions: (1) he would not be able to obtain the treatment he needed while in confinement, and (2) TRICARE would cover a portion of any treatment and Appellant therefore needed to keep his benefits in order to afford treatment. Through his own words, Appellant opened the door for the Government to explain the programs available at military confinement facilities, and to rebut Appellant's

---

[8] Trial defense counsel specifically stated that although the parties entered into a stipulation of fact, the Defense was not waiving its objection to the affidavit itself.

suggestion that military confinement was inconsistent with treatment he believed he needed and that he would incur a financial burden to seek that treatment. *See Wirth*, 18 M.J. at 218. We find the affidavit and subsequent stipulation of fact were proper rebuttal and probative. Accordingly, the military judge did not abuse her discretion in overruling the objection to the affidavit or allowing this information to be considered by the members.

## D. Convening Authority's Decision on Action

### 1. Additional Background

Appellant's trial concluded on 12 December 2019. On 21 December 2019, Appellant submitted matters in clemency, asking the convening authority not to approve that part of his punishment that adjudged a reduction in grade from E-6 to E-1.

On 27 December 2019, the convening authority rendered his decision on action, "tak[ing] no other action on the sentence in this case beyond the terms required under the approved and accepted pretrial agreement." The convening authority further explained, "Prior to coming to this decision, I consulted with my Staff Judge Advocate [SJA]. Before declining to take action beyond the terms of the pretrial agreement, I considered matters timely submitted by the accused under R.C.M. 1106." The convening authority disapproved confinement that exceeded 118 months, disapproved adjudged forfeitures, approved deferral of automatic forfeitures, and waived automatic forfeitures; he took no other action on the sentence.

After the conclusion of his court-martial, Appellant did not raise a motion under R.C.M. 1104(b)(2)(B) to challenge the form or legality of the convening authority's decision on action, nor has Appellant asserted on appeal that the convening authority erred in taking no action on the part of his sentence adjudging reduction in grade.

### 2. Law and Analysis

During the pendency of this appeal, the United States Court of Appeals for the Armed Forces (CAAF) decided *United States v. Brubaker-Escobar*, ___ M.J. ___, No. 20-0345, 2021 CAAF LEXIS 818 (C.A.A.F. 7 Sep. 2021) (per curiam), holding:

> [I]n any court-martial where an accused is found guilty of at least one specification involving an offense that was committed before January 1, 2019, a convening authority errs if he fails to take one of the following post-trial actions: approve, disapprove, commute, or suspend the sentence of the court-martial in whole or in part.

*Id.* at *1.

In *Brubaker-Escobar*, the CAAF found the convening authority's failure to explicitly take one of those actions was a "procedural error." *Id.* at \*2, 7–8. The court then noted: "Pursuant to Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2018), procedural errors are 'test[ed] for material prejudice to a substantial right to determine whether relief is warranted.'" *Id.* at \*8 (alteration in original) (quoting *United States v. Alexander,* 61 M.J. 266, 269 (C.A.A.F. 2005)).

The new version of Article 66, UCMJ, 10 U.S.C. § 866, in the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM)*, provides jurisdiction to a Court of Criminal Appeals when the military judge enters a judgment into the record that includes a sentence of a punitive discharge. Article 66(b)(3), UCMJ, 10 U.S.C. § 866(b)(3) (2019 *MCM*). Here, the members sentenced Appellant to a dishonorable discharge, and the convening authority could not disturb this component of the sentence that was entered as the judgment of the court. Article 60a(b)(1)(B), UCMJ, 10 U.S.C. § 860a(b)(1)(B) (2019 *MCM*). Consequently, the convening authority's error in taking "no other action on the sentence" had no effect on Appellant's adjudged dishonorable discharge. Therefore, this court has jurisdiction of the appeal.

In testing for prejudice, we have examined the convening authority's decision on action and find Appellant suffered no material prejudice to a substantial right. The convening authority expressly stated that he considered Appellant's clemency request and consulted with his SJA before reaching a decision. The convening authority twice stated his intent to take no action on the sentence beyond that which was required of him by the pretrial agreement. That agreement did not require the convening authority to take action on any reduction in grade that may be adjudged. Under the circumstances, we find the convening authority's intent to approve the adjudged reduction in grade was "clear and unambiguous," *United States v. Politte*, 63 M.J. 24, 26 (C.A.A.F. 2006), even though the decision is not in proper form. Finding no prejudice, we decline to provide relief to Appellant on this issue.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

POSCH, Senior Judge (concurring in part and in the result):

I agree with my esteemed colleagues on the resolution of the issues addressed in the opinion of the court except to the extent that opinion reaches the issue of the content of the military judge's instructions on the transitional

compensation program, finds error, and tests for prejudice. As evident from law, regulation, and the record, the program allows payment of benefits to military dependents to partially offset the loss of military pay and benefits upon—among other criteria for eligibility—conviction of a qualifying offense. I agree with my colleagues that the military judge did not err in finding information about the program was proper rebuttal after Appellant opened the door in his sentencing case, and that judicial notice was a means by which the factfinder could be informed about the program. I also agree that Appellant's characterization of the program as a "collateral" consequence of the sentence, on appeal, is incorrect.

In his assignment of error on this issue, Appellant asks this court to decide that the military judge erred by taking judicial notice of the program. In deciding if there is any merit to this issue, it is important to note that Appellant's objection to the ruling at the sentencing hearing focused on just three areas. First, Appellant, disagreed that he opened the door to rebuttal. Second, Appellant argued judicial notice was inappropriate because information about the program was not admissible under Rule for Courts-Martial 1001. Third, Appellant argued the probative value of this information was outweighed by unfair prejudice to him under Mil. R. Evid. 403. Appellant preserved his claim of error by offering a timely objection to the judicial notice request. The military judge did not abuse her discretion in overruling the objection on the three bases advanced by Appellant.

In preserving his claim, Appellant recognized that if the military judge took judicial notice of the program, then "it will essentially become part of the judge's instructions" given to the members. However, Appellant never challenged the content of those instructions even after acknowledging the possibility that judicial notice "would be given a lot of weight by the members." The first opportunity to object was immediately after the close of evidence when the instruction was given for the first time. Nor did Appellant object to trial counsel's argument to the factfinder referencing that instruction and then discussing the program as applied to Appellant's family. After the military judge again gave the judicial notice instruction before the members began deliberations, civilian defense counsel acknowledged he had no objection to the instructions as given. At the same time, when asked if he had any request for additional instructions, civilian defense counsel responded he did not. Civilian defense counsel gave a similar response earlier in the sentencing proceedings when the military judge gave counsel for both parties an opportunity to review her draft instructions outside the presence of the members.

Appellant affirmatively waived appellate review of the content of the judicial notice instructions by neither objecting to the instructions as given nor requesting additional instructions after having been prompted by the military

judge as to whether there were any objections. Appellant twice conceded to the instructions before the members began their deliberations. *See, e.g., United States v. Wall*, 349 F.3d 18, 24 (1st Cir. 2003) ("[C]ounsel twice confirmed upon inquiry from the judge that he had 'no objection and no additional requests.' Having directly bypassed an offered opportunity to challenge and perhaps modify the instructions, appellant waived any right to object to them on appeal."), *quoted with approval in United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020).

Because trial defense counsel affirmatively declined to object to the final instructions and offered no additional instructions, Appellant expressly and unequivocally acquiesced to the instructions that were given, and the actions of his counsel thus constitute waiver. *See also United States v. Rich*, 79 M.J. 472, 476–77 (C.A.A.F. 2020) (citations omitted) (finding waiver of findings instruction where the appellant specifically discussed a potential instruction but failed to request it). To be clear, Appellant did not just fail to object to the instructions, which would trigger plain error review; Appellant waived appellate review on this issue. *See, e.g., United States v. Blanks*, 77 M.J. 239, 241 (C.A.A.F. 2018) (citation omitted). On this record, Appellant has not demonstrated a reason to pierce that waiver to evaluate for error. *See United States v. Hardy*, 77 M.J. 438, 442–43 (C.A.A.F. 2018); *see also United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016) (citation omitted) (addressing this court's responsibility to "assess the entire record to determine whether to leave an accused's waiver intact, or to correct the error").

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court